DAVIS ET AL. *v.* BOARD OF SCHOOL COMMIS-
SIONERS OF MOBILE COUNTY ET AL.

No. 436.   Argued October 13–14, 1970—Decided April 20, 1971

BURGER, C. J., delivered the opinion for a unanimous Court.

*Jack Greenberg* argued the cause for petitioners.   With
him on the briefs were *James M. Nabrit III, Michael*

*Davidson, Norman J. Chachkin,* and *Anthony G. Amsterdam.*

*Abram L. Philips, Jr.,* argued the cause for respondents Board of School Commissioners of Mobile County et al. With him on the brief were *George F. Wood, John J. Sparkman, James B. Allen,* and *Jack Edwards. Samuel L. Stockman* argued the cause for respondents Mobile County Council Parent-Teacher Associations et al. With him on the brief were *W. A. Kimbrough, Jr.,* and *John W. Adams, Jr.*

*Solicitor General Griswold* argued the cause for the United States as *amicus curiae.* With him on the brief was *Assistant Attorney General Leonard.*

Briefs of *amici curiae* were filed by *Albert P. Brewer,* Governor, *MacDonald Gallion,* Attorney General, and *Joseph D. Phelps,* Special Assistant Attorney General, for the State of Alabama; by *A. F. Summer,* Attorney General, and *Semmes Luckett,* Special Assistant Attorney General, for the State of Mississippi; by *Robert V. Light* and *Herschel H. Friday* for the Little Rock School District et al., and by *William L. Taylor, Richard B. Sobol,* and *Joseph L. Rauh, Jr.,* for the United Negro College Fund, Inc., et al.

Mr. Chief Justice Burger delivered the opinion of the Court.

Petitioners in this case challenge as inadequate a school desegregation plan for Mobile County, Alabama. The county is large and populous, embracing 1,248 square miles and the city of Mobile. The school system had 73,500 pupils in 91 schools at the beginning of the 1969 academic year; approximately 58% of the pupils were white and 42% Negro. During the 1967–1968 school year, the system transported 22,000 pupils daily in over

200 school buses, both in the rural areas of the county and in the outlying areas of metropolitan Mobile.

The present desegregation plan evolved from one developed by the District Court in response to the decision of the Court of Appeals for the Fifth Circuit in *Davis* v. *Board of School Comm'rs*, 414 F. 2d 609 (CA5 1969), that an earlier desegregation plan formulated by the District Court on the basis of unified geographic zones was "constitutionally insufficient and unacceptable, and such zones must be redrawn." The Court of Appeals held that that earlier plan had "ignored the unequivocal directive to make a conscious effort in locating attendance zones to desegregate and eliminate past segregation." *Id.,* at 610.

The District Court responded with a new zoning plan which left 18,623, or 60%, of the system's 30,800 Negro children in 19 all-Negro or nearly all-Negro schools. On appeal, the Court of Appeals reviewed all aspects of desegregation in Mobile County. Additional information was requested regarding earlier desegregation plans for the rural parts of the county, and those plans were approved. They are not before us now. The Court of Appeals concluded that with respect to faculty and staff desegregation the board had "almost totally failed to comply" with earlier orders, and directed the District Court to require the board to establish a faculty and staff ratio in each school "substantially the same" as that for the entire district. 430 F. 2d 883, 886. We affirm that part of the Court of Appeals' opinion for the reasons given in *Swann* v. *Charlotte-Mecklenburg Board of Education, ante,* p. 1, at 19–20.

Regarding junior and senior high schools, the Court of Appeals reversed the District Court and directed implementation of a plan that was intended to eliminate the seven all-Negro schools remaining under the District

Court's scheme. This was to be achieved through pairing and adjusting grade structures within metropolitan Mobile, without bus transportation or split zoning. The Court of Appeals then turned to the difficult problem of desegregating the elementary schools of metropolitan Mobile. The metropolitan area is divided by a major north-south highway. About 94% of the Negro students in the metropolitan area live on the east side of the highway between it and the Mobile River. The schools on that side of the highway are 65% Negro and 35% white. On the west side of the highway, however, the schools are 12% Negro and 88% white. Under the District Court's elementary school plan for the metropolitan area, the eastern and western sections were treated as distinct, without either interlocking zones or transportation across the highway. Not surprisingly, it was easy to desegregate the western section, but in the east the District Court left 12 all-Negro or nearly all-Negro elementary schools, serving over 90% of all the Negro elementary students in the metropolitan area.

The Court of Appeals rejected this solution in favor of a modified version of a plan submitted by the Department of Justice. As further modified after a second appeal, this plan reduced the number of all-Negro or nearly all-Negro elementary schools from 12 to six schools, projected to serve 5,310 students, or about 50% of the Negro elementary students in the metropolitan area. Like the District Court's plan, the Court of Appeals' plan was based on treating the western section in isolation from the eastern. There were unified geographic zones, and no transportation of students for purposes of desegregation. The reduction in the number of all-Negro schools was achieved through pairing, rezoning, and adjusting grade structures within the eastern section. With yet further modifications not material

here, this plan went into effect at the beginning of the 1970–1971 school year.

The enrollment figures for the 1970–1971 school year show that the projections on which the Court of Appeals based its plan for metropolitan Mobile were inaccurate. Under the Court of Appeals' plan as actually implemented, nine elementary schools in the eastern section of metropolitan Mobile were over 90% Negro as of September 21, 1970 (instead of six as projected), and they housed 7,651 students, or 64% of all the Negro elementary school pupils in the metropolitan area. Moreover, the enrollment figures indicate that 6,746 Negro junior and senior high school students in metropolitan Mobile, or over half, were then attending all-Negro or nearly all-Negro schools, rather than none as projected by the Court of Appeals. These figures are derived from a report of the school board to the District Court; they were brought to our attention in a supplemental brief for petitioners filed on October 10, 1970, and have not been challenged by respondents.

As we have held, "neighborhood school zoning," whether based strictly on home-to-school distance or on "unified geographic zones," is not the only constitutionally permissible remedy; nor is it *per se* adequate to meet the remedial responsibilities of local boards. Having once found a violation, the district judge or school authorities should make every effort to achieve the greatest possible degree of actual desegregation, taking into account the practicalities of the situation. A district court may and should consider the use of all available techniques including restructuring of attendance zones and both contiguous and noncontiguous attendance zones. See *Swann, supra,* at 22–31. The measure of any desegregation plan is its effectiveness.

On the record before us, it is clear that the Court of Appeals felt constrained to treat the eastern part of metropolitan Mobile in isolation from the rest of the school system, and that inadequate consideration was given to the possible use of bus transportation and split zoning. For these reasons, we reverse the judgment of the Court of Appeals as to the parts dealing with student assignment, and remand the case for the development of a decree "that promises realistically to work, and promises realistically to work *now*." *Green* v. *County School Board,* 391 U. S. 430, 439 (1968).

*It is so ordered.*