Cynthia D. GREEN, etc., et al., Plaintiffs,

v.

The SCHOOL BOARD OF the CITY OF ROANOKE et al., Defendants.

Civ. A. No. 1093.

United States District Court,
W. D. Virginia,
Roanoke Division.

July 21, 1971.

Court believes that it is in agreement with the stipulated facts.

675

S. W. Tucker, Hill, Tucker & Marsh, Richmond, Va., and George W. Harris, Jr., Roanoke, Va., for plaintiffs.

James N. Kincanon, City Atty., and H. Ben Jones, Asst. City Atty., Roanoke, Va., for defendants.

## OPINION and JUDGMENT

DALTON, District Judge.

On April 20, 1971, the Supreme Court handed down its long-awaited decisions in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), and Davis v. Board of School Commissioners of Mobile County, 402 U.S. 33, 91 S.Ct. 1289, 28 L.Ed.2d 577 (1971). On the basis of these decisions the United States Court of Appeals for the Fourth Circuit on June 10, 1971, Adams v. School District No. 5, Orangeburg County, 444 F.2d 99, reversed and remanded the judgment of this court which had held that the elementary school plan for the City of Roanoke as approved for the year 1970–71 constituted a unitary school system. Accordingly, the defendant school board was ordered to submit a new plan which would fully establish a unitary school system. This plan and the objections to it were explored in a hearing held by this court on July 13, 1971.

On July 16, 1971 the court requested a restudy and reconsideration of the city plan in connection with four (4) elementary schools, namely, Melrose, Hurt Park, Forest Park and Westside (which would have over forty (40%) percent—the figure plaintiffs have urged is objectionable) to determine whether a racial balance might be achieved more in line with the school population ratio.

This court and the defendant school board have been directed to "make every effort to achieve the greatest possible degree of actual desegregation, taking into account the practicalities of the situation." Adams v. School District No. 5, 444 F.2d 99 (4th Cir. 1971), quoting from, Davis v. Board of School Commissioners of Mobile County, 402 U.S. 33, 91 S.Ct. 1289, 28 L.Ed.2d 577 (1971). On that basis the court proceeds to consideration of the plan submitted by the school board.

Briefly, the elementary school plans proposed by the board envisions the operation of 24 elementary schools during the 1971–1972 school year. Harrison Elementary School, which is an older all-black school, is to be closed and the students previously attending that school are to be divided and transported to eight other elementary schools. Various other transfers and exchanges of students are to be accomplished with the result that 22 of the 24 schools will have percentages of black students ranging from 15% to 38.6%, and the remaining two, Melrose and Hurt Park will be the only schools over the 40% mark.

The following table for 1971–1972 demonstrates to this court that the City of Roanoke has made a genuine and wholehearted effort to comply with the law of the land as to racial integration in our public schools:

| Elementary School | % Negro |
|---|---|
| Belmont | 16.5 |
| Crystal Spring | 16.7 |
| Fairview | 26.2 |
| Fishburn Park | 21.5 |
| Forest Park | 38.6 |
| Garden City | 16.2 |
| Grandin Court | 19.7 |
| Highland Park | 26.7 |
| Huff Lane | 16.9 |
| Hurt Park | 64.1 |
| Jamison | 20.6 |
| Lincoln Terrace | 25.7 |
| Melrose | 93.7 |
| Monterey | 25.7 |
| Morningside | 15.0 |
| Oakland | 21.4 |
| Preston Park | 25.5 |
| Raleigh Court | 20.6 |
| Round Hill | 19.5 |
| Virginia Heights | 17.8 |
| Wasena | 15.9 |
| Washington Heights | 24.2 |
| West End | 35.8 |
| Westside | 35.8 |

The defendant estimates that 51.6% of all elementary students to be transported are black and that 48.4% are white. All elementary students are to be transported at public expense and the school board estimates, without challenge from the plaintiffs, that the total operating cost of its plan in the first year will be $274,751, which includes the initial capital expense of purchasing fifteen buses.

The Stolee plan advanced by the plaintiffs would require that more than twice as many elementary students would be transported as would be required under the board plan. Although the plaintiffs estimate the cost of their plan to be $215,370, a supplemental letter to the court from the defendants' counsel since the hearing estimates the cost to be $421,000.

Although not expressly raised in the plaintiffs' exceptions to the school board plan filed on July 8, 1971, the plaintiffs objected at the hearing to the closing of Harrison Elementary School. They also contended that adoption of the board plan would "result in a disproportionate amount of the burden of transportation falling on the black children."

■ It is no doubt true that school authorities may not intentionally seek to place an excessive degree of the burden of desegregation on the black community. Such action would be unconstitutional both as a denial of equal protection and as an attempt at retribution for the exercise of the right to demand the abolition of a discriminatory school system. In this case, however, the court sees no basis for finding that such an intention on the part of the school board exists. Under the circumstances of this case, it is inevitable that a higher pro rata share of the desegregation burden will be borne by the black minority than will be the case for the white majority. Postulation of a set of assumed facts may be helpful for purposes of illustration. Assume that the relative percentages of white and black students are 75% and 25%, (approximately) respectively, (which are the figures agreed to exist in Roanoke) and that four schools of equal enrollment, 1 black and 3 white,

are to be fully integrated. If a racial balance at each school is desired, it is obvious that 75% of the total black children will be transferred as against only 25% of the white children.

■ The federal courts are alert to protect citizens against purposeful and invidious discrimination. Against such abuses equitable powers are extensive. In the absence of unequal treatment, however, citizens must look to the legislative branch of government for requested relief. The courts are not, and cannot be, enforcers of a philosophy that the effects of any governmental action must never weigh more heavily on one citizen or group of citizens than upon another citizen or group of citizens.

■■ Under the facts of this case, the court finds that there exists a reasoned basis for the proposed closing of Harrison in that it is one of the city's oldest schools and that its closing and the ensuing transfers will permit a better physical environment for its students. The court also finds that the proposed transportation plan was rationally devised to promote desegregation at a reasonable cost and thereby to conserve funds for other needs in the improvement of education in the city. The court further finds that these plans were proposed in a good faith effort to comply with the constitutional requirements of a unitary school system and not as an attempt to place an unfair burden upon the black community.

Having considered the contentions that the board plan discriminates against the Negro population, the court turns to consider whether the plan accomplishes the establishment of a unitary school system.

■ By way of introduction the court notes that it listened with interest to the testimony of Dr. Stolee and Dr. Theodore that a plan envisioning pairing and grouping of schools would create a "community of interest" and would be more desirable. Even if such a plan would be more sociologically desirable, however, the court feels that its only authority is to require the school board to propose a plan which satisfies the constitutional requirements of a unitary system.

School authorities are traditionally charged with broad power to formulate and implement educational policy and might well conclude, for example, that in order to prepare students to live in a pluralistic society each school should have a prescribed ratio of Negro to white students reflecting the proportion for the district as a whole. To do this as an educational policy is within the broad discretionary powers of school authorities; absent a finding of a constitutional violation, however, that would not be within the authority of a federal court. Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

Upon questioning from the court, Dr. Stolee, expert witness for the plaintiffs, indicated that he particularly objected to the provision of the school board plan as first presented, leaving four schools with more than 40% black student enrollments. As above stated, the court was concerned about these schools and sought and obtained an amendment to the plan which removes this objection as to Forest Park and Westside.

The two remaining schools with over 40% Negro students (Melrose 93.7% and Hurt Park 64.1%) have been given special scrutiny, and the best thought that the court is able to come up with is that for the approaching school session, we will as a practicality, have to live with the Melrose and Hurt Park situations.

At the hearing the court directed questions to Superintendent Alcorn of the Roanoke School System with regard to the justification for leaving Melrose a 93.7% black enrollment school. He answered that during the last decade the school had changed from an all-white school to a fully integrated school, and finally to a nearly all-black school. This change was attributed to changed racial residential patterns.

In considering this situation, the court notes the following comment of the Supreme Court in *Swann* with regard to one-race schools:

> The record in this case reveals the familiar phenomenon that in metropolitan areas minority groups are often found concentrated in one part of the city. In some circumstances certain schools may remain all or largely of one race until new schools can be provided or neighborhood patterns change. Schools all or predominantly of one race in a district of mixed population will require close scrutiny to determine that school assignments are not part of state-enforced segregation.

*Swann, supra,* 402 U.S. at 25, 91 S.Ct. at 1280. The court feels that this progression of Melrose from a white, to an integrated, to a nearly all-black school demonstrates that it is not a vestige of state-enforced segregation and that its proposed enrollment will not frustrate the establishment of a unitary school system.

While Hurt Park has a high percentage of black students (64.1%) in relation to the total school population, it cannot be termed essentially an all-black school. Even though the racial ratios are not what might be considered desirable, it is certainly an integrated school.

The court feels that the practical situation existing at Hurt Park and Melrose does not negate from the conclusion that Roanoke has succeeded in establishing a unitary school system. In reaching this conclusion, however, the court suggests to the board that in the months ahead it continue its study and consideration of Melrose and Hurt Park (and for that matter any other school where it may be appropriate to do so) with the end in mind that racial inbalances may be improved if possible.

The Court of Appeals in its opinion noted that this court could approve the junior high and senior high school plans as previously upheld by this court. At the hearing none of the parties objected to this approval and, accordingly, the court approves continuation of last year's junior and senior high plans or the plans as reasonably modified and not objected to by the plaintiffs.

Continuation of the directive to obtain at each school a staff racially representative of the system as a whole is also approved. The court further approves continued adherence to the modified HEW guidelines concerning hiring, administrative, and promotional policies for employees of the Roanoke School System.

In summary, the court approves the school board plan because it:

(1) is based on a non-discriminating policy on the part of the defendant school board;

(2) attempts to provide the best physical and educational environment practical for the school students;

(3) it keeps at a reasonable level the busing of students;

(4) the plan proposed by the city is practical and will be effective in maintaining a unitary school system;

(5) seeks to provide a high quality educational opportunity for all students; and

(6) achieves a high degree of actual integration consonant with the preservation of school funds and tax revenues.

For the above reasons the plan proposed by the City of Roanoke for elementary schools is approved, and it is so adjudged and ordered by the court.

The court also approves the present junior and senior high school assignment plan.

The purposes of this action, which was first filed in August 1960, having been accomplished, it is now dismissed and ordered stricken from the docket, and proper costs and attorneys' fees will be taxed against the defendant by separate order to be entered herein.

This action may be reinstated on the docket for good cause shown by either party, after reasonable notice to counsel for the opposite party, for such other, further and general relief as may seem proper.