Robert L. ACREE et al., Plaintiffs-Appellants-Cross-Appellees,

v.

COUNTY BOARD OF EDUCATION OF RICHMOND COUNTY, GEORGIA, et al., Defendants-Appellees-Cross-Appellants,

v.

Ann Gunter DRUMMOND et al., Intervenors-Appellees-Cross-Appellants.

No. 72–1211.

United States Court of Appeals, Fifth Circuit.

March 31, 1972.

Rehearings Denied April 18 and May 2, 1972.

John H. Ruffin, Jr., Augusta, Ga., Jack Greenberg, Norman J. Chachkin, New York City, for plaintiffs-appellants.

Franklin H. Pierce, Bobby G. Beazley, Augusta, Ga., for School Board.

O. Torbitt Ivey, Jr., Augusta, Ga., for Ann Gunter Drummond.

Leonard O. (Pete) Fletcher, Augusta, Ga., for appellees-cross-appellants.

Before JOHN R. BROWN, Chief Judge, and MORGAN and INGRAHAM, Circuit Judges.

BY THE COURT:

These are appeals from the order of the district court dated January 13, 1972, directing implementation of a desegregation plan for the schools of Richmond County, Georgia. The history of this case is well documented by the district court. Acree, et al. v. Drummond, et al. v. County Board of Education of Richmond County, Georgia, et al., 336 F. Supp. 1275 (S.D., Ga., 1972).

■ The County Board of Education and Intervenors raise numerous objections to the desegregation plan being implemented by the district court, most of which do not even merit discussion. The major contention is that the district court erred in requiring "forced bussing" to achieve racial balance in violation of the equal protection clause of the Fourteenth Amendment and of Title IV of the Civil Rights Act of 1964.[1]

In Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), the Court made quite clear that bussing is an available tool for use by district courts in achieving school desegregation. In the instant case the district court utilized this tool along with the pairing, clustering and zoning methods long authorized by the Supreme Court and this court. Swann v. Charlotte-Mecklenburg Board of Education, supra; Davis v. Board of School Commissioners of Mobile County, 402 U.S. 33, 91 S.Ct. 1289, 28 L.Ed.2d 577 (1971); Boykins v. Fairfield Board of Education, 457 F.2d 1091 (5th Cir., 1972); Singleton v. Jackson Municipal Separate School District, 432 F.2d 927 (5th Cir., 1970).

■ The argument that the equity powers of federal district courts have been limited by Title IV of the Civil Rights Act of 1964 has been rejected in Swann, where the Court found no intent on the part of Congress to restrict the powers of federal courts to enforce the equal protection clause or "to withdraw from courts their historic equitable remedial powers." 402 U.S. at 17, 91 S.Ct. at 1277.

■ The board and intervenors contend, however, that the district court's order irreparably harms "quality education" in Richmond County. The district

1. 42 U.S.C. § 2000c.

court should not, and did not permit the use of such platitudes to perpetuate a dual school system, nor could it permit defendants to rely on the inferiority of certain school facilities to which children were to be transferred as a justification for continued racial discrimination. The Court in *Swann* stated unequivocally:

"In default by the school authorities of their obligation to proffer acceptable remedies, a district court has broad power to fashion a remedy that will assure a unitary school system. 402 U.S. at 16, 91 S.Ct. at 1276."

The Richmond County Board of Education has operated and continues to operate a *de jure* as well as a *de facto* segregated system, and has long been under order to desegregate. *See* Acree v. County Board of Education of Richmond County, Ga., 399 F.2d 151 (5th Cir., 1968). Despite a clear duty, the board has offered no viable *constitutional* alternative to the plan implemented by the court below, but instead has engaged in conduct only designed to disrupt and delay the disestablishment of a dual system.

From our review of the plan adopted by the district court and the evidence presented, we are of the firm view that there is no indication whatsoever that the transportation required as a result of the court's plan would adversely affect the health of the children or impinge on the educational process. We are also convinced that a *good faith* effort by the school board will overcome any logistical problems that might arise.

The issues raised by plaintiffs have been dealt with by our prior order of February 8, 1972, in which we required the district court to consider plaintiffs' alternate plan along with those submitted by the court's experts in the development of a unitary system for the secondary schools of Richmond County.

We too recognize the practical problems which forced the district court to delay implementation of a plan for the secondary schools, and there are now little more than two months remaining in the school year. However, in view of the serious delays which have occurred in this case over past years, we order that a plan be developed immediately for the secondary schools, that some demonstrable progress be made now [2] and that a schedule be adopted forthwith in order that a constitutional plan will be implemented at the beginning of the 1972–73 school year.

The district court is required to take whatever steps are necessary under its equity powers to assure compliance and cooperation from the school board in implementing a plan for the secondary schools and in carrying out the three phases of its desegregation plan for the elementary schools of Richmond County.[3]

The order of the district court of January 13, 1972 is affirmed as modified herein.

The mandate shall issue forthwith.

2. For example, transportation facilities needed as a result of the plan should be arranged, funds applied for, budget changes contemplated, etc.

3. The effect of the district court's plan, of course, is not to be ameliorated by such practices as segregation by race in the classroom. If the court receives evidence of such behavior, it should take further steps to enforce its decree. *See* Moses v. Washington Parish School Board, 456 F.2d 1285 (5th Cir., 1972).