UNITED STATES of America, Plaintiff,

Nellie Mae Webb et al., Intervenors,

v.

The SCHOOL DISTRICT OF OMAHA et al., Defendants.

Civ. No. 73-0-320.

United States District Court, D. Nebraska.

April 27, 1976.

Ross L. Connealy, Dept. of Justice, Washington, D. C., for plaintiffs.

Robert V. Broom, Legal Aid Society, Omaha, Neb., for intervenors.

Gerald P. Laughlin, Omaha, Neb., for defendants.

## MEMORANDUM OPINION

SCHATZ, District Judge.

This matter comes before the Court for approval of a comprehensive student integration plan to be implemented this coming fall term in the School District of Omaha.

On June 12, 1975, the Court of Appeals for the Eighth Circuit in *United States v. School District of Omaha,* 521 F.2d 530 (8th Cir. 1975), *cert. denied,* 423 U.S. 946, 96 S.Ct. 361, 46 L.Ed.2d 280, ordered that the Omaha School District be integrated, established guidelines for the achievement of that goal, and further ordered that this Court should retain jurisdiction to insure that a comprehensive student integration plan would be effective and would be carried out. The Court of Appeals further ordered that it would be the responsibility of the Board of Education to develop a comprehensive plan for integrating the student body, that such plan should be presented to this Court no later than January 1, 1976, and that the Omaha School District should be integrated no later than the beginning of the 1976–77 school year. The guidelines to be followed in developing and implementing the student integration plan, together with a discussion of all relevant factors to be considered in formulating the plan, are set forth in full in the opinion of the Court of Appeals, and cases cited there-in, and it is not necessary to review those matters here at this time.

Thereafter, on December 31, 1975, the School Board presented to this Court a proposed plan for integrating the student body in the Omaha School District. Following the submission of that plan, the Court, on January 21, 1976, entered an order that the parties would have until February 2, 1976, to file written objections and briefs in support thereof with reference to the proposed plan. The Court further ordered that a hearing would be had on February 20, 1976, with reference to the Court adopting and approving a plan for student integration in the Omaha School District and requested that any alternative plans be submitted to the Court on or before the hearing date.

On February 2, 1976, the intervenors filed their objections to the proposed plan and on February 4, 1976, the plaintiff, United States of America, filed a "response" to the proposed plan which included some objections and some suggested changes in the proposed plan. On February 17, 1976, the defendant School District submitted certain adjustments to its original plan, by letter, which is now filed herein.

On February 20 and 23, 1976, a hearing was held at which time all the parties were given full opportunity to adduce evidence in opposition to and in support of the proposed plan of the Omaha School Board and on the second day of the hearing, the intervenors filed and submitted certain alternatives to the proposed plan. On March 17, 1976, the plaintiff, United States of America, filed certain amendments to its original response of February 4, 1976, and on March 23, 1976, intervenors filed an "amplification" to their February 23, 1976, suggested alternatives. Thereafter, on April 8, 1976, the defendant Omaha School District filed its response and reply concerning the plaintiff's and intervenors' alternative plans. The matter is now ready for determination by this Court as to a final comprehensive student integration plan for the School District of Omaha.

It should be noted, at the outset, that all the parties herein, and the Board of Educa-

tion and its Task Force,[1] have gone about the assignment of formulating a student integration plan with exemplary good faith, cooperation and sincere efforts to resolve the problem. An adversary approach has been minimal. To the contrary, the parties, the School Board and the Task Force have evinced a genuine dedication to the formulation and operation of an excellent integrated school system within the framework of the law.[2]

Obviously, the scope and magnitude of the problem makes the formulation of any total and comprehensive integration plan an inherently difficult task. No one plan can completely reconcile all of the divergent views which are necessarily involved in this matter. No plan, standing alone, is perfect. In *Green v. County School Board of New Kent County,* 391 U.S. 430, 439, 88 S.Ct. 1689, 1695, 20 L.Ed.2d 716 (1968), the Supreme Court acknowledged, "[t]here is no universal answer to complex problems of desegregation; there is obviously no one plan that will do the job in every case. The matter must be assessed in light of the circumstances present and the options available in each instance."

The obligation of this Court is to adopt a just, equitable and workable plan in accordance with the guidelines and other relevant factors to be considered as mandated by the Court of Appeals; a plan that promises to achieve now and hereafter the greatest possible degree of actual desegregation in the Omaha Public School District, taking also into account the practicalities of the situation. Furthermore, the plan must be effective and, of course, must be carried out. "The measure of any desegregation plan is its effectiveness." *Davis v. Board of School Commissioners,* 402 U.S. 33, 37, 91 S.Ct. 1289, 1292, 28 L.Ed.2d 577 (1971). *See also Green v. County School Board of New Kent County, supra,* 391 U.S. at 439, 88 S.Ct. 1689.

As previously noted, modifications, alternatives and amendments to the School District's proposed plan have been explored, studied and briefed by the parties and also by this Court. Each of the parties has, in effect, submitted an original plan, as well as amendments and modifications thereto. The parties have been given every opportunity to offer evidence in explanation and support of their proposed plans and in opposition to the respective proposals of the other parties.

It is safe to say that the utmost care has been exercised in the adoption of a student integration plan and that no feasible alternatives have been overlooked or disregarded. This Court is now confident that all available options have been fully explored, together with the possible benefits and particular problems involved with each particular one.[3]

 Having carefully considered the various aspects of each proposal in great detail, this Court hereby adopts the proposed plan of the Omaha School Board as modified by the February 17, 1976, letter and as modified by the plaintiff's latest amendments to its original response (Filing No. 146). No alternative plan has been shown to be as feasible or as promising in its effectiveness which also is in compliance with the mandate of the Court of Appeals. This modified School Board Plan is fair in relation to all of the objectives to be

---

1. The Task Force is a ten-member group appointed by the School Board to study various possible student integration plans and to assist the School Board in formulating a final comprehensive student integration plan for submission to the Court as per the Court of Appeals mandate, and they did so. The group is comprised of Omaha School administrative personnel and teachers.

2. It should also be noted that this Court has had invaluable and major help and assistance in an advisory capacity from the Court-appointed Interracial Committee, which has met regularly over the past seven months and worked many hours toward the composition of a student integration plan. The Court publicly expresses sincere thanks to the Committee as, I am sure, do the parties herein and this community. Valuable input was also contributed by the Nebraska Department of Education concerning many phases of the integration plan.

3. The exploration included a personal inspection by this Court of many of the schools involved.

achieved and in the manner of achieving them.[4] It provides meaningful assurance of prompt and effective desegregation of the Omaha School District and simultaneously promotes and enhances equality of education. The procedures are realistic, feasible and educationally sound, in the best judgment of this Court. The plan is equitable in that the burdens of integration are borne as equally as possible by blacks and whites in all areas of the district, bearing in mind the circumstances and practicalities of the situation. At the same time, the plan avoids unnecessary impositions and burdens on both black and white students. For all of the foregoing reasons, the Court concludes that this modified School Board Plan is the best available remedy.[5]

Although the plan in question is comprehensive, certain logistics remain to be attended to and certain adjustments may be necessary, from time to time, to alleviate specific problems which may arise. Accordingly, the plan is subject to some change and to minor adjustments in the future. In that connection, the Court is mindful that

4. In a few instances, the following two deviations from the original guidelines of the Court of Appeals are being permitted, this Court expressly finding no evidence that said deviations will aggravate white flight or make it more difficult to achieve the fully integrated school system:

(1) Those schools with current black enrollment exceeding 50% may be permitted to lower the black proportion of their enrollment to 50% rather than 35%; and (2) Those schools with current black enrollment between 35% and 50% may be permitted to continue with their current enrollment ratios, rather than requiring them to lower the black enrollment to 35%.

5. The primary objection to this plan voiced by the intervenors is that the first grade children are not involved in full-time, compulsory reassignment. They submit that the law requires full-time integration of the first grade. The law is not so absolute. As in other cases, it is dependent upon the facts and circumstances before the Court. The Supreme Court in *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), recognized that integration remedies are subject to certain limitations and other values and interests must be considered.

An objection to transportation of students may have validity when the time or distance of travel is so great as to either risk the health of the children or significantly impinge on the educational process. * * * It hardly needs stating that the limits on the time of travel vary with many factors, but probably with none more than the age of the students. *Id.* at 30–31, 91 S.Ct. at 1283. Several courts have approved the exclusion of first graders from full-time integration plans. *Thompson v. School Board of City of Newport News,* 363 F.Supp. 458 (E.D.Va.1973), *aff'd,* 498 F.2d 195 (4th Cir. 1974); *Flax v. Potts,* Civ. No. 4205 (N.D.Tex., filed August 23, 1973); *Newburg Area Council, Inc. v. Board of Education of Jefferson County,* Civ. Nos. 7045 and 7291 (W.D.Ky., filed July 30, 1975), and Civ. Nos. 7045–L(G) and 7291–L(G) (W.D.Ky., filed April 1, 1976).

At the hearing on February 20 and 23, 1976, evidence was introduced by the defendant that long periods of daily transportation would adversely affect the physical and mental processes of first grade children and would inhibit their educational development due to susceptibility to mental and physical fatigue. No evidence to the contrary was presented. It is the best judgment of this Court that first grade students should not be included on a compulsory, full-time basis in the integration plan. The evidence in this case is persuasive, and common sense dictates, that children who are attending a full day of school for the first time are subject to a high risk of failure (or retention). These youngsters are in a transitional period from a home and neighborhood environment into a structured and well-ordered public type of environment. At the first grade age, such pupils are not yet, on a comparative basis, physically as strong as the children in the higher grades and are subject to periods of frequent illness. Because it is their first year of full-day school involvement, these youngsters tend to be emotionally immature and easily frustrated. It is during the first grade year that these children learn to read, which alone is a difficult undertaking, and which first establishes their learning patterns for the remainder of their school lives. For these reasons, it is the opinion of this Court that the interests of the students in question, from an educational and physiological standpoint, are best served by minimizing, wherever possible, all of the circumstances which may tend to make more difficult, rather than enhance, their first formative school year.

This is not to say that all first graders are excluded from any involvement in the plan. To the contrary, the plan adopted herein specifically provides for voluntary racial balance transfers and for many, significant integrative learning experiences on the first grade level, all as set forth in the original School Board Plan as amended by the February 17, 1976, letter.

logistics which remain to be developed, and which will be resolved in further orders, include components such as transportation, health, safety and security precautions, special needs transfers, monitoring provisions, including periodic reports to the Court, and faculty reassignments.

Accordingly, it will be the order of this Court that the proposed plan of the Omaha School Board, as modified by the February 17, 1976, letter and as modified by the plaintiff's latest amendments to its original response, be adopted and implemented in compliance with the mandate of the Court of Appeals. In that connection, defendant shall submit to this Court within ten (10) days from date hereof a complete, printed draft of said plan, approved by all parties as to form, which draft will then be made a part of, by reference, a final order and decree by this Court integrating the student body of the Omaha School District for the commencement of the 1976–77 school year.

Upon entry of said final order, this opinion shall serve as the Court's findings of fact and conclusions of law.