Robert Anthony REED et al., Plaintiffs,

v.

James A. RHODES et al., Defendants.

No. C73–1300.

United States District Court,
N. D. Ohio, E. D.

May 16, 1979.

James L. Hardiman, Theresa Demchak, Cleveland, Ohio, Nathaniel R. Jones, New York City, Thomas I. Atkins, Roxbury, Mass., for plaintiffs.

Jeremiah Glassman, Michael Sussman, Dept. of Justice, Washington, D.C., for amicus curiae, United States of America.

Mark O'Neill, Weston, Hurd, Fallon, Paisley & Howley, George I. Meisel, James P. Murphy, Squire, Sanders & Dempsey, John H. Bustamante, Cleveland, Ohio, for defendants.

## ORDER

BATTISTI, Chief Judge.

The Court has been asked by the local defendants to clarify the roles of the various parties to this proceeding. In order to fully articulate the obligations of the parties, the basic guiding principles underlying the remedial order in this case will be explored.

This lawsuit has proceeded to the stage of remediation for the sole reason that the defendants have knowingly and voluntarily deprived the minority children in the City of Cleveland of an equal opportunity education. These actions, which were catalogued in this Court's August 31, 1976 order and February 6, 1978 remand order, were gross and deliberate. Despite the defendants' present intentions and representations, in the past they or their predecessors engaged in decisions and actions with the purpose of segregating the black children in the school system. After careful deliberation, the Court came to this conclusion after the plaintiffs proved during the course of a long and thorough liability trial more than 200 instances of educational questions being decided on racial grounds. The defendants' conduct extended over a considerable period of time and adversely affected the educational opportunities for generations of minority children in Cleveland.

Once the defendants have been found liable for having created and perpetuated a segregated school system, the Constitution of the United States requires that affirmative steps be taken to remedy the unlawful conditions. The district court's mandate in desegregation proceedings is clear:

"The District Court must be mindful not only of its 'authority to grant appropriate relief,' but also of its *duty to remedy fully those constitutional violations it finds.* It should be flexible but unflinching in its use of its equitable powers, always conscious that it is the rights of individual school children that are at stake, and that it is the constitutional right to equal treatment for all races that is being protected." *Dayton Board of Education v. Brinkman*, 433 U.S. 406, 424, 97 S.Ct. 2766, 2777, 53 L.Ed.2d 851 (1977) (J. Brennan, concurring) (emphasis added)

Regardless of the pressures brought to bear on the court, it cannot shirk its constitutional obligations to disestablish an unconstitutional system and to require a lawful system to operate "as soon as practical." *Green v. County School Board of New Kent County,* 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968).

For the most part, the district court's duties and responsibilities are unique and exclusive. Notwithstanding the various attempts by litigants to discredit a district court judge or proceeding, our judicial system relies exclusively on the reasonable factual judgments of a district court. *Dayton Board of Education v. Brinkman, supra.* The district court is familiar with the local situation and is in the best position to appraise the efforts and motivations of the parties. *Milliken v. Bradley,* 433 U.S. 267 at 287, note 18, 97 S.Ct. 2749, at 2760, note 18, 53 L.Ed.2d 745. *Brown v. Board of Education of Topeka, Kan.,* 349 U.S. 294, at 299, 75 S.Ct. 753, at 755, 99 L.Ed.2d 1083. The Supreme Court has acknowledged that in desegregation cases "we must of necessity rely to a large extent, as [the Supreme Court] has for more than 16 years, on the informed judgments of the district court . . ." *Swann v. Board of Education,* 402 U.S. 1, 28, 91 S.Ct. 1267, 1282, 28 L.Ed.2d 554 (1971). Therefore, all other reviewing courts pay due deference to the conclusions and wisdom of district court findings. The district court, therefore, must remain fully apprised of all actions and factual developments which may impact its fact finding and remedial obligations.

The defendants in this case carry a weighty and substantial burden. They, jointly and severally, have the primary and unalterable obligation to rectify the condi-

tions which have been found unlawful. Their constitutional duty to use their best efforts to effectively desegregate the Cleveland School system supercedes their electoral obligations. If these differing commitments conflict, the defendants are required to obey the highest law of the land and to conscientiously carry out their constitutional mandates.[1] This is the heart of a constitutional democracy and reflects our country's and city's need for elected officials with back bones to withstand destructive political forces. This court is fully aware of the political pressures brought to hear on elected school officials and adopts the perceptions of the federal judge in *Evans v. Buchanan* who stated:

> "[T]he Court is not totally insensitive to the dismay and anger experienced by some white citizens who must assume responsibility for violations arising out of discriminatory laws enacted in the past over which they exercised little or no control. However sincere and strongly held, such beliefs fail to recognize that widespread discrimination, sanctioned by law, was practiced in Delaware in contravention of the United States Constitution." 447 F.Supp. 982, at 1001.

The situation in Cleveland requires patience, devotion to higher principles of law, and ungrudging sacrifice to create a positive atmosphere of quality education for every school child regardless of race.[2]

■ The defendants' constitutional duties are defined by a variety of consistent mandates. First, the Fourteenth Amendment, of its own force, proscribes them from intentionally denying educational opportunities of school children on the basis of race. Second, this Court's August 31, 1976 order enjoins them from affirmatively seg-

---

1. The fact that a local school board is elected does not put it beyond the reach of the law. *Elected officials must obey the constitution. See, e.g., U. S. v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491.

2. The *federal court's responsibility to protect the civil rights of citizens against discriminatory government action has, in the mind of an* esteemed Supreme Court justice, "maintained public esteem for the federal courts and has permitted the peaceful co-existence of the counter-majoritarian implications of judicial review and the democratic principles upon which our Federal Government in the final analysis rests," *United States v. Richardson,* 418 U.S. 166, 192, 94 S.Ct. 2940, 2954, 41 L.Ed.2d 678 (1974) (J. Powell, concurring)

regating or maintaining segregation in the school system. Third, the various court orders in this case have the force of law and require that the parties act affirmatively toward the goal of desegregation. The defendants have the duty to follow the letter and spirit of this court's decrees. If they knowingly attempt to avoid a judicially defined duty, they may be subject to sanction.

The defendants will be held responsible to undertake those tasks which a reasonable interpretation of the orders would dictate. It should be noted that unquestioning reliance on the advice of counsel does not insulate the defendants from civil sanctions. Further, the defendants should be aware that, as long as they remain under the shadow of contempt, their actions, of necessity, will be more closely scrutinized to ensure that they are not motivated by racial reasons. *See U. S. v. Wilcox County Board of Education,* 494 F.2d 575, 580 (5th Cir.) *cert. denied,* 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974).

The defendants have the further burden to provide information and assistance to this Court. The Court has the duty to review the plans and activities of the defendants to judge whether they pass constitutional muster. The standard of review is one of fundamental fairness, *Swann v. Board of Education, supra,* of feasibility and of effectiveness. *Green v. County School Board of New Kent County, supra; Davis v. School Commissioners of Mobile County,* 402 U.S. 33, 37, 91 S.Ct. 1289, 28 L.Ed.2d 577 (1970). The Court, however, requires input from the school system. Without such aid, the Court must make a judgment which, for lack of information and assistance, may not be the best solution given all of the extant, yet unidentified circumstances.

The Cleveland community should be aware that the local defendants' refusal to cooperate with the Court jeopardizes the effectuation of the best plan for the city. The remedy could, perhaps, be better conceived if the Court had more assistance.

The defendants may not take it upon themselves to ignore provisions of court orders because of their belief that the orders are no longer applicable. The defendants will be held to the letter and spirit of all extant court orders until they have been modified by a proper application to this Court. The state defendants' January 22, 1979 motion requesting a modification of prior court order shows that they, at least, understand the proper procedure. Yet, the local defendants have manifested their complete disregard for such procedures by attempting, *inter alia,* (a) to "voluntarily desegregate" the schools in such fashion that it violated existing court orders,[3] (b) to reassign Addison students to schools which had not been approved; and (c) to refuse to develop a disciplinary code despite a clear order to do so.

Although the Court believes that the procedures which follow should have been respected up to this date,[4] from this point further, the following procedure for clarifying or modifying a court order or for submitting any report or document to this court shall be carefully complied with by the local defendants:

1. If the report or submission is the final position, plan or policy required by court order, then it shall be submitted to the Court only after it has been formally adopted and voted by the local board and it shall be signed by a majority of the school board members, by the Superintendent and by the Deputy Superintendent for Desegregation Implementation. Should the local defendants have any

---

**3.** Counsel for local defendants admitted on February 13, 1979 that "we do recognize the need for a modification of the plan." Fleming Deposition, February 13, 1979, p. 85 (Mr. Murphy). Yet, the local defendants made no effort to seek such a modification.

**4.** Many prior incidents of the local defendants' late filings, defaults and violations of proper procedures are under consideration. This order in no way precludes this Court from sanctioning the defendants for such conduct. Nor does it absolve the defendants of responsibility for their past acts.

question whether the document should follow this or some other procedure, this procedure should be used.

2. If the report or submission is merely a status report or item which is not required to and does not purport to describe a final position, plan, or policy, then it shall be signed by the Deputy Superintendent for Desegregation Implementation and by the individual whose primary obligation it was to draft or create.[5]

3. If a clarification or modification of a court order or directive is sought, counsel should file a motion in the clerk's office and follow the proper procedure required of all motions in this lawsuit.

4. For the purposes of this order, a signature on any report or submission signifies that the signor has read the entire document, understands its contents, has had the opportunity to reject, modify or revise the contents of the document and that the signor is aware of and understands the Court order which has required the document to be drafted or compiled.

5. All reports, plans, documents, motions for clarification and modification shall be filed with the Court at least 30 days before the defendants or moving party expect the document to be ruled on. The Court requires sufficient time to notice and hold a hearing on the adequacy or merits of the request or document and to write a memorandum or an opinion on the request or document. The party re-sponsible for any late filing or submission shall not be heard to claim that Court deliberation and review could disrupt or impair the effectuation of further planning or implementation of the remedy.[6]

The Court expects and requires the state defendants to work closely with the local defendants in the formulation and evaluation of desegregation plans and in the other myriad duties required by order. The state defendants shall also be held responsible for general oversight of the local defendants' efforts to comply with Court order. If they are aware of any information regarding the local defendants' failure to comply with any court order, then they are hereby ordered to so inform the Court. The state defendants are also hereby ordered to obtain, review, and sign all documents reflecting a final position, plan, or policy as described in procedure 1 above adopted by the local defendants. The state defendants shall file such signed document and any substantive or procedural critique within ten days of the local defendants' submission of the document into court, unless otherwise stated in court order.

IT IS SO ORDERED.

---

**5.** The local defendants have consistently stated since Margaret Fleming was appointed that desegregation planning should pervade the entire school administration and system. Unfortunately, there is reason to believe that this explanation has been a ruse to completely fragment and stultify the desegregation planning effort. See April 9, contempt investigation order. The December 21, 1977 order clearly intended the D.D.I. to be an independent department which would centralize all desegregation planning. As will be discussed below, the defendants' efforts to decentralize has resulted in disjunctive planning and situations where even the Deputy Superintendent for D.D.I. did not fully know what desegregation efforts were being undertaken. The procedure adopted here is intended to centralize all desegregation planning in the D.D.I. The Deputy Superintendent shall be held responsible for having authorized all such planning and for having analyzed the legal, practical and financial aspects of all such plans. If this procedure doesn't fully centralize all functions into the D.D.I., other measures will be considered in the future.

**6.** On top of the fact that the local defendants unlawfully failed to seek Court approval of the February Addison transfers, once the matter came to the attention of the Court, the defendants attempted to steamroller through their plans by suggesting that it was too late to disrupt the community's expectations and to make any changes in the reassignments. The local defendants can rest assured that such argumentation in the future shall be dealt with harshly.