(2008)
COALITION TO DEFEND AFFIRMATIVE ACTION, INTEGRATION AND IMMIGRATION RIGHTS and Fight for Equality by any Means Necessary (BAMN), United for Equality and Affirmative Action Legal Defense Fund, Rainbow Push Coalition, Calvin Jevon Cochran, Lashelle Benjamin, Beautie Mitchell, Denesha Richey, Stasia Brown, Michael Gibson, Christopher Sutton, Laquay Johnson, Turqoise Wise-King, Brandon Flannigan, Josie Human, Issamar Camacho, Kahleif Henry, Shanae Tatum, Maricruz Lopez, Alejandra Cruz, Adarene Hoag, Candice Young, Tristan Taylor, Williams Frazier, Jerell Erves, Matthew Griffith, Lacrissa Beverly, D'Shawnm Featherstone, Danielle Nelson, Julius Carter, Kevin Smith, Kyle Smith, Paris Butler, Touissant King, Aiana Scott, Allen Vonou, Randiah Green, Brittany Jones, Courtney Drake, Dante Dixon, Joseph Henry Reed, AFSCME Local 207, AFSCME Local 214, AFSCME Local 312, AFSCME Local 836, AFSCME Local 1642, AFSCME Local 2920, and the Defend Affirmative Action Party, Plaintiffs,
v.
The REGENTS OF the UNIVERSITY OF MICHIGAN, the Board of Trustees of Michigan State University, the Board of Governors of Wayne State University, the TRUSTEES of any other public college or university, community college, or school district, Attorney General Michael Cox, and Eric Russell, Defendants, and
Chase Cantrell, M.N., a minor child, by Karen Nestor, Mother and Next Friend, Karen Nestor, Mother and Next Friend of M.N., a minor child, C.U., a minor child, by Paula Uche, Mother and Next Friend, Paula Uche, Mother and Next Friend to C.U., a minor child, Joshua Kay, Sheldon Johnson, Matthew Countryman, M.R., a minor child, by Brenda Foster, Mother and Next Friend, Brenda Foster, Mother and Next Friend of M.R., a minor child, Bryon Maxey, Rachel Quinn, Kevin Gaines, Dana Christensen, T.J., a minor child, by Cathy Alfaro, Guardian and Next Friend, Cathy Alfaro, Guardian and Next Friend of T. J., a minor child, S. W., a minor child, by Michael Weisberg, Father and Next Friend, Michael Weisberg, Father and Next Friend of S. W., a minor child, Casey Kasper, Sergio Eduardo Munoz, Rosario Ceballo, Kathleen Canning, Edward Kim, M.C.C. II, a minor child, by Carolyn Carter, Mother and Next Friend, Carolyn *949 Carter, Mother and Next Friend of M.C.C., II, a minor child, J.R., a minor child, by Matthew Robinson, Father and Next Friend, Matthew Robinson, Father and Next Friend of J.R., a minor child, Plaintiffs,
v.
Attorney General Michael Cox and Eric Russell, Defendants.
Nos. 06-15024, 06-15637.
United States District Court, E.D. Michigan, Southern Division.
December 11, 2008.

OPINION AND ORDER DENYING CANTRELL PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT

DAVID M. LAWSON, District Judge.
On March 18, 2008, the Court entered summary judgment in favor of the State in these consolidated cases, thereby rejecting the plaintiffs' claims that Proposal 2 which amended Michigan's state constitution by prohibiting affirmative action programs in public education, employment, and contractingoffended the United States Constitution. The Cantrell plaintiffs now ask the Court to alter or amend the judgment on the theory that the Court relied upon an untenable distinction between prohibiting "preferential treatment" and withholding "equal protection" in rejecting their arguments based on their Hunter/Seattle theory. The Court, however, will abide by its original decision.
Federal Rule of Civil Procedure 59(e) authorizes a district court to "alter or amend a judgment" in the case of a clear error of law, newly discovered evidence, an intervening change in controlling law, or manifest justice. Henderson v. Walled Lake Consol. Schs., 469 F.3d 479, 496 (6th Cir.2006) (quoting Intera Corp. v. Henderson, 428 F.3d 605, 620 (6th Cir. 2005)); GenCorp., Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir.1999) (citing Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir.1998)).
The Cantrell plaintiffs cite three bases of perceived legal error, although they all entail the distinction this Court drew between a state constitutional amendment that prohibits "preferential" treatment and one that denies "equal" treatment. There is no disputing that the Court found this difference important, reasoning that legislation making it more difficult for certain groups to achieve preferential treatment is significantly different than legislation that burdens efforts to achieve parity. See Coal. to Defend Affirmative Action v. Regents of the Univ. of Mich., 539 F.Supp.2d 924, 956-57 (E.D.Mich.2008) (citing Coal. for Econ. Equity v. Wilson, 122 F.3d 692, 707-08 (9th Cir.1997)). The Cantrell plaintiffs submit that this distinction is "inconsistent with the process-based nature of the Hunter-Seattle principle," Br. in Supp. at 3; conflicts with precedent, id. at 7; and is "judicially unmanageable," id. at 9.
The plaintiffs contend that the Court misapplied Hunter v. Erickson, 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969), Washington v. Seattle Sch. Dist. No. 1, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982), and Romer v. Evans, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996), by failing to understand that those cases recognized a right to fairness in the political process, as opposed to entitlement to a particular outcome. The plaintiffs submit that to consider differently legislation that burdens, on the one hand, a group's interest in preferential treatment and, on the other, its interest in equal treatment is to inject a substantive component into the analysis that is inconsistent with the Supreme Ccurt's jurisprudence. This Court respectfully disagrees. To acknowledge that there are limits to the Hunter/Seattle doctrine based on the nature of the legislative agenda that is burdened is not to tear the doctrine from its moorings; in fact, the Supreme Court's decisions placed substantial weight on this variable.
In Hunter, the Court not only stressed that the challenged ordinance "treat[ed] racial housing matters differently from other racial and housing matters," Hunter, 393 U.S. at 389, 89 S.Ct. 557, but also that it facilitated a community's tendency to discriminate, see id. at 391, 89 S.Ct. 557 ("[A]lthough the law on its face treats Negro and white, Jew and gentile in an identical manner, the reality is that the law's impact falls on the minority. The majority needs no protection against discrimination and if it did a referendum might be bothersome but no more than that.").
In Romer, the Court addressed the constitutionality of an amendment to Colorado's Constitution that prohibited "all legislative, executive or judicial action at any level of state or local government designed to protect ... gays and lesbians" from discrimination. Romer, 517 U.S. at 624, 116 S.Ct. 1620. The Court found this repugnant to the Equal Protection Clause because it "withd[rew] from homosexuals, but no others, specific legal protection from the injuries caused by discrimination, and it [forbade] reinstatement of these laws and policies," save by another amendment. Id. at 627, 116 S.Ct. 1620.
Seattle admittedly creates an unevenness in this line of thought, which the plaintiffs seek to exploit. In that case, a statewide initiative was passed that effectively prohibited desegregative busing. Seattle, 458 U.S. at 462, 102 S.Ct. 3187. As in Hunter, the Court held that the initiative effectuated a racial classification by "remov[ing] the authority to address a racial problemand only a racial problemfrom the existing decisionmaking body, in such a way as to burden minority interests." Id. at 474, 102 S.Ct. 3187. That selective restructuring of school board authority burdened future attempts to integrate (and thus minority interests) "by lodging decision-making authority over the question at a new and remote level of government." Id. at 483, 102 S.Ct. 3187.
Because prohibiting integration (when it is not constitutionally mandated) is not tantamount to discrimination, the plaintiffs make a fair point: the Court in Seattle did not (and could not) rely on the notion that the restructuring at issue impeded efforts to secure equal treatment. But this does not mean that any political restructuring with a racial focus that happens to burden minority interests is unconstitutional. The initiative in Seattle is still fundamentally different than Proposal 2 in that racial integration programs do not presumptively offend the Equal Protection Clause, whereas affirmative action programs might. The Ninth Circuit keyed in on this concept in Coalition for Economic Equity v. Wilson, writing as follows:
The district court perceived no relevant difference between the busing programs at issue in Seattle and the racial preference programs at issue here. We have recognized, however, that "`stacked deck' programs [such as race-based `affirmative action'] trench on Fourteenth Amendment values in ways that `reshuffle' programs [such as school desegregation] do not." Associated Gen. Contractors of Cal. v. San Francisco Unified Sch. Dist., 616 F.2d 1381, 1387 (9th Cir.), cert. denied, 449 U.S. 1061, 101 S.Ct. 783, 66 L.Ed.2d 603 (1980). Unlike racial preference programs, school desegregation programs are not inherently invidious, do not work wholly to the benefit of certain members of one group and correspondingly to the harm of certain members of another group, and do not deprive citizens of rights. Id.

Coalition for Economic Equity, 122 F.3d at 708 n. 16. Although certain aspects of the Ninth Circuit's discussion have been underminedthe Supreme Court held in Grutter v. Bollinger, 539 U.S. 306, 334-35, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003), that racial preferences may be necessary to further a compelling state interest in certain circumstances, and implied in Parents Involved in Community Schools v. Seattle School District No. 1, ___ U.S. ___, ___, 127 S.Ct. 2738, 2751, 168 L.Ed.2d 508 (2007), that desegregation programs may deprive individuals of legal rightsthe core principle remains sound. Desegregation is constitutionally required in certain instances, see, e.g., Columbus Bd. of Educ. v. Penick, 443 U.S. 449, 453-55, 99 S.Ct. 2941, 61 L.Ed.2d 666 (1979); Davis v. Bd. of School Comm'rs of Mobile Cty., 402 U.S. 33, 37-38, 91 S.Ct. 1289, 28 L.Ed.2d 577 (1971); Green v. School Bd. of New Kent Cty., 391 U.S. 430, 441-42, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Brown v. Bd. of Educ., 347 U.S. 483, 493-96, 74 S.Ct. 686, 98 L.Ed. 873 (1954); but the Supreme Court has never held that affirmative action is required, and Grutter made clear that it is barely tolerated. See Grutter, 539 U.S. at 341-43, 123 S.Ct. 2325 (confirming that "[a] core purpose of the Fourteenth Amendment was to do away with all governmentally imposed discrimination based on race," and explaining in light of that, "We expect that 25 years from now, the use of racial preferences will no longer be necessary to further the interest approved today") (internal quotation marks omitted). It is reasonable to take account of this circumstance in interpreting the scope of the Hunter/Seattle doctrine.
The Court also must reject the plaintiffs' argument that distinguishing between an amendment that prohibits "preferential" treatment and one that denies "equal" treatment is "judicially unmanageable." As an initial matter, this argument is premised on a faulty assumption about the nature of adjudication. The Court does not render decisions by assessing how useful they may prove to future practitioners or judges. The Court's role is limited to ascertaining the law and applying it to the facts presented. Policy may inform the law in certain respects, but it cannot displace it. The Court will not contradict its view of the law simply because the plaintiffs perceive that this view may be difficult to apply.
The Court also disagrees with the plaintiffs' assertion that the distinction is too nice to understand and that it is mired in subjectivity. Courts, just like individuals, may disagree on the propriety of affirmative action in public education for a host of reasons. In cases such as this, a court's objective assessment of the legal issues may ever be at odds with its subjective analysis of sound policy. But the idea that affirmative action constitutes race-based preferential treatment is well established by Supreme Court precedent. Gratz v. Bollinger, 539 U.S. 244, 270, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003); Grutter, 539 U.S. at 326, 123 S.Ct. 2325; Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995). Granted, it may not be so clear in other contexts whether the burdened legislative agenda calls for preferential (as opposed to equal) treatment. But courts deal with tough calls on a daily basis, and there is little doubt here that they will be equal to the tasks to come.
Finally, it bears noting that the challenges in this case were brought barely before the ink on Proposal 2 was dry. There is little in the record addressing the impact the legislation has had, or the difficulty in securing equal treatment it may cause. If objective facts ultimately demonstrate that the plaintiffs' worst fears are coming to pass, then an as-applied challenge may be appropriate.
The Court concludes that the Cantrell plaintiffs are not entitled to alteration or amendment of the judgment pursuant to Rule 59(e). The Court did not commit a clear error of law in determining that Proposal 2 facially passes muster under Hunter and progeny.
Accordingly, it is ORDERED that the motion to alter or amend the judgment by the Cantrell plaintiffs [dkt. # 253] is DENIED.