Wilma Joyce **HARRINGTON** et al.,
Plaintiffs,

v.

**COLQUITT COUNTY BOARD OF EDU-CATION** et al., Defendants-Appellees,
E. E. Reid, Jr., John W. Mobley et al.,
Intervenors-Appellants.

No. 72-1579.

United States Court of Appeals,
Fifth Circuit.

May 10, 1972.

Frank T. Holt, Thomas K. Vann, Jr., Thomasville, Ga., for intervenors-appellants.

James C. Whelchel, Moultrie, Ga., for Colquitt.

Reuben H. Yancey, Valdosta, Ga., for Sutton and others.

C. B. King, Herbert E. Phipps, Albany, Ga., for other interested parties.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Again we deal with the school desegregation problems of Colquitt County, Georgia.[1] Today we review two plans proposed below to eliminate the dual elementary school system in Colquitt County. After a review of the record and briefs, we vacate the judgment below and direct the district court to adopt the plan proposed by the intervenors, Reid, et al.

This Court on June 29, 1971, directed the district court to order the school board of Colquitt County to implement a plan for the 1971–1972 school year which would achieve a greater degree of desegregation among the five elementary schools in Moultrie, the principal city in Colquitt County. This plan was to comply fully with the principles established in Swann v. Charlotte-Mecklenburg Board of Education, 1971, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554. Harrington v. Colquitt County Board of Education, 5 Cir. 1971, 446 F.2d 1011. The school board subsequently proposed a plan which would desegregate these five grammar schools by creating a ratio of from 50.9 to 56% white and from 44 to 49.1% black children in each of the schools. This result would be achieved by busing.

At this point, Reid, et al., white residents of Moultrie, intervened in the action. The intervenors objected to the school board's plan on the basis that it would leave five elementary schools immediately outside the city limits of Moultrie with a ratio of 90% white and 10% black children. Fearing a white exodus from the five elementary schools in the city of Moultrie, the intervenors proposed a "70–30" plan to the district court. In essence, this plan would achieve a ratio of approximately 70% white and 30% black children in each of the five schools in Moultrie as well as the five outside the city. As with the school board's plan, this result would be achieved by busing. The district court, however, erroneously construed this Court's order of June 29 to mean that he had no authority to go beyond that order and consider a plan which concerned five additional schools not mentioned on the prior appeal (i. e., the five elementary schools outside Moultrie), and on that basis approved the school board's plan. On appeal, on October 28, 1971, we vacated the judgment of the district court and remanded the cause to that court with directions to hold a full evidentiary hearing upon and to consider the intervenors' plan for integrating the grammar schools of Colquitt County. Harrington v. Colquitt County Board of Education, 5 Cir. 1971, 450 F.2d 1113.

On February 17, 1972, the district court held the directed evidentiary hearing on the intervenors' plan. Evidence was introduced at this hearing which showed that: (a) attendance at the five elementary schools in the city of Moultrie in 1971 (the school board's plan was implemented for the 1971–72 school year) ranged from 43.09 to 52.76% white and from 47.24 to 56.91 black; (b) attendance at the five elementary schools outside the city of Moultrie not included in the school board's plan was from 82.40 to 99.58% white and from .42 to 17.60% black children; (c) the intervenors' plan would accomplish a racial balance of from 64.2 to 69.2% white and from 30.8 to 35.8% black children in each of the five schools in Moultrie while attaining a ratio of from 67.6 to 70.5% white and from 29.5 to 32.4% black children in each of the five schools

---

1. In chronological order: Harrington et al. v. Colquitt County Bd. of Ed. et al., 5 Cir. 1971, 446 F.2d 1011; Harrington et al., Sutton et al. v. Colquitt County Bd. of Ed., 5 Cir. 1971, 449 F.2d 161; Harrington et al. v. Colquitt Couny Bd. of Ed. v. Reid et al., 5 Cir. 1971, 450 F.2d 1113.

outside the city of Moultrie;[2] (d) the intervenors' plan would not cost significantly more than the school board's plan to implement; (e) the intervenors' plan would entail between nine and sixteen minutes more busing time each way for the school children bused to the five outside schools now involved under the school board plan; and (f) the intervenors' plan was as sound educationally as the plan proposed by the school board. Despite this evidence, the district court held that the school board's plan sufficiently met the requirements of *Swann,* and ordered implementation of this plan for the 1972–73 school year. This appeal by the intervenors timely followed.

■ *Swann* teaches that our purpose in these proceedings must be ". . . to eliminate from the public schools all vestiges of state-imposed segregation", 402 U.S. at 15, 91 S.Ct. at 1275, 28 L.Ed.2d at 566, and that " . . . a school authority's remedial plan or a district court's remedial decree is to be judged by its effectiveness", 402 U.S. at 25, 91 S.Ct. at 1280, at 28 L.Ed.2d at 572, in achieving this purpose. In addition, the Supreme Court held in *Swann* that:

". . . in a system with a history of segregation the need for remedial criteria of sufficient specificity to assure a school authority's compliance with its constitutional duty warrants a presumption against schools that are substantially disproportionate in their racial composition. Where the school authority's proposed plan for conversion from a dual to a unitary system contemplates the continued existence of some schools that are all or predominately of one race, they have the burden of showing that such school assignments are genuinely nondiscriminatory. The court should scrutinize such schools, and the burden upon the school authorities will be to satisfy the court that their racial composition is not the result of present or past discriminatory action on their part." 402 U.S. at 26, 91 S.Ct. at 1281, 28 L. Ed.2d at 572.

■ The five elementary schools outside the city of Moultrie are predominately of one race (white), and thus come under the Supreme Court's proscription in *Swann.* In light of the history of segregation in Colquitt County, the existence of an alternative plan that eliminates the single race characteristic of the five predominately white elementary schools outside Moultrie, and the minimal burden adoption of this plan would entail, a "close scrutiny" of the

2. The following information regarding attendance was introduced at the hearing below:

| The five elementary schools in Moultrie covered by the school board's plan: | 1971 attendance | | Projected attendance under the Intervenors' plan | |
|---|---|---|---|---|
| | % white | % black | % white | % black |
| Central | 47.78 | 52.22 | 66.1 | 33.9 |
| Cox | 51.70 | 48.30 | 67.4 | 32.6 |
| Gray | 43.09 | 56.91 | 64.2 | 35.8 |
| Vereen | 52.76 | 47.24 | 69.2 | 30.8 |
| Wright | 52.03 | 47.97 | 69.2 | 30.8 |
| *The five elementary schools outside Moultrie not covered by the school board's plan:* | | | | |
| Culbertson | 99.58 | .42 | 69.4 | 30.6 |
| Okapilco | 86.92 | 13.08 | 70.5 | 29.5 |
| Reedy Creek | 82.40 | 17.60 | 69.0 | 31.0 |
| Sunset | 95.80 | 4.20 | 69.4 | 30.6 |
| Funston | 86.17 | 13.83 | 67.6 | 32.4 |

school board's plan reveals that it does not overcome the presumption against the "continued existence of some schools that are all or predominately of one race". Keeping in mind the Supreme Court's admonition in Davis v. Board of School Commissioners of Mobile County, 1971, 402 U.S. 33, 81 S.Ct. 1289, 28 L. Ed.2d 577, a companion case to *Swann*, that "[h]aving once found a violation, the district judge or school authorities should make every effort to achieve the greatest possible degree of actual desegregation", 402 U.S. at 37, 91 S.Ct. at 1292, 21 L.Ed.2d at 580–581, we therefore find that the plan proposed by the school board and approved by the district court here is clearly inadequate to constitute full compliance with *Swann* principles. Further, we agree with the Sixth Circuit that "[w]here there has been a history of state-imposed segregation of the schools, it is not sufficient to adopt a plan which, out of context, might be seen as nondiscriminatory but which does not do as much to disestablish segregation as an alternative proposal which is feasible and pedagogically sound". Robinson v. Shelby County Board of Education, 6 Cir. 1971, 442 F. 2d 255, 258.

■ Nor do we feel that the intervenors' use of mathematical ratios renders their plan fatally defective. The Supreme Court in *Swann* prohibited the use of mathematical ratios only where there was no finding of constitutional violation. Although pointing out that "[t]he constitutional command to desegregate schools does not mean that every school in every community must always reflect the racial composition of the school system as a whole", 402 U.S. at 24, 91 S.Ct. at 1280, 28 L.Ed.2d at 571, the Court proceeded:

"Awareness of the racial composition of the whole school system is likely to be a useful starting point in shaping a remedy to correct past constitutional violations. In sum, the very limited use made of mathematical ratios [here] was within the equitable remedial discretion of the District Court". 402 U.S. at 25, 91 S.Ct. at 1280, 28 L. Ed.2d at 572.

The use of mathematical ratios in the *instant* case provides a "useful starting point" in drawing up an effective desegregation plan which will meet the mandate of *Swann*.

We therefore vacate the judgment below and direct the district court to adopt the intervenors' plan. The district court is also directed to schedule expedited hearings for such modifications to the intervenors' plan as may be necessary to correct unworkable elements in the plan and to allow the parties an opportunity to suggest improvements in the plan, to the end that these ten elementary schools will be more effectively desegregated than they were under the present school board plan.[3] See, e. g., Bivins v. Bibb County Board of Education, 5 Cir. 1970, 424 F.2d 97. These hearings must be held promptly so as not to delay the full implementation of the plan by the start of the 1972–1973 school year.

■ The district court shall require the school board to file semi-annual reports during the school year under the requirements of United States v. Hinds County School Board, 5 Cir. 1970, 433 F.2d 611, 618–619.

The mandate shall issue forthwith.

Vacated and remanded with directions.

3. As in other cases, we caution against placing the burden of disestablishment of the dual school system in Colquitt County predominately upon the black students. See, e. g., Lee v. Macon County Board of Education, 5 Cir. 1971, 448 F.2d 746.