Josephine GOSS et al., Plaintiffs-Appellants,

v.

The BOARD OF EDUCATION OF the CITY OF KNOXVILLE, TENNESSEE, et al., Defendants-Appellees.

Nos. 72–1766, 72–1767.

United States Court of Appeals, Sixth Circuit.

July 18, 1973.

Avon N. Williams, Jr., Nashville, Tenn., Carl A. Cowan, Knoxville, Tenn., Jack Greenberg, James M. Nabrit, III, Norman J. Chachkin, Sylvia Drew, John F. Butler, New York City, for plaintiffs-appellants.

S. Frank Fowler, Sr., Sam F. Fowler, Jr., W. P. Boone Dougherty, Knoxville, Tenn., for defendants-appellees; Fowler, Rowntree, Fowler & Robertson, and Bernstein, Dougherty & Susano, Knoxville, Tenn., of counsel.

Before PHILLIPS, Chief Judge, and WEICK, EDWARDS, CELEBREZZE, PECK, McCREE, MILLER and LIVELY, Circuit Judges.

## PER CURIAM.

This appeal was heard by a panel of the Court on February 12, 1973 and affirmed with a per curiam opinion filed on March 29, 1973. Appellants' petition for rehearing was granted, and a rehearing in banc was held, without further oral arguments, on June 6, 1973. Under Rule 3(b) of this Court, the previous opinion and judgment were vacated.

The history of this case, which has now been in litigation for more than thirteen years, may be found in the District Court's opinion. See Goss v. Board of Education, 340 F.Supp. 711 (E.D. Tenn.1972). When it was last before this Court, the case was remanded "for further proceedings consistent with Swann v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed. 2d 554 and other relevant Supreme Court opinions announced on April 20, 1971." Goss v. Board of Education, 444 F.2d 632, 640 (6th Cir. 1971). In remanding we declined to set a timetable within which Knoxville must conform to what is directed by these Supreme Court opinions, and noted that—

> Swann (1971) fixes no formulae for what must be done or what will be acceptable in efforts to arrive at a better racial mix in the schools. It does, however, lay on school authorities the duty to take some affirmative action toward improvement. While the existence of some all black or all white schools is not struck down as per se intolerable, school authorities will have to justify their continuance by something more than the accident or circumstance of neighborhood. Consideration of pairing of school zones, contiguous or non-contiguous, should be given; arrangement of new construction so as to further desegregation will be a legitimate objective, not to the detriment, however, of the discharge of school authorities' total and overriding responsibilities, 444 F.2d at 638.

Following remand, an evidentiary hearing was held. In the summer of 1971, on the basis of consultation with Dr. Charles Trotter, a professional educator employed as Director of the University of Tennessee School Planning Lab, the Knoxville Board of Education made a number of changes in its desegregation plan. Among other revisions, the privilege of student transfer was severely restricted, new school pairings and zone adjustments were made and election of minority cheerleaders was assured. The amendments also provided for simultaneous closing of Cansler, a predominantly black elementary school, and Moses, a

predominantly white elementary school. Dr. Trotter testified in support of this plan and introduced a pupil locator map which had been constructed by the Board of Education. The plaintiffs presented a plan prepared by Dr. Michael Stolee, Associate Dean of the University of Miami (Florida) School of Education. Dr. Stolee testified in support of this plan. The District Court held that "Knoxville is in compliance with *Swann*." We affirm this holding and remand for the limited purpose hereafter noted.

The District Court has complied with the directions of this Court as contained in the opinion of Judge O'Sullivan in 444 F.2d 632 (6th Cir. 1971). The situation before Judge Taylor upon remand from this Court was quite different from that faced by Judge McMillan in Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). In this case the District Judge had two plans presented to him for further desegregation of the Knoxville school system. As his opinion demonstrates, there were a number of reasons for giving less weight to the plan offered by the plaintiffs than to the one offered by the Board of Education. As trier of the facts it was his responsibility to make judgments on the weight of evidence and credibility of the various witnesses.

While it is true that some schools in the Knoxville system will remain identifiably black or white on the basis of pupil enrollment, this is largely the result of several concentrations of blacks in the area of East Knoxville. In *Swann* the Supreme Court recognized that there are frequently concentrations of minority groups in one or more parts of a metropolitan area and the existence of a small number of racially identifiable schools in these areas is not, in and of itself, a sign that a dual system exists.

■ The school authorities of Knoxville have taken affirmative actions to improve the racial mix of the schools, as required by our previous decision. Furthermore, the appellee presented evidence concerning the location of highways and railroad yards in relation to prominent topographical features, matters other than "the accident or circumstance of neighborhood," from which the Court was justified in finding that no plan involving the transportation of pupils between non-contiguous zones in order to further improve the racial mix within the system would be feasible at this time. There was evidence also of a lack of funds to purchase and operate buses. However, the financial condition of the City of Knoxville would not provide sufficient reason for failing to order the transportation of pupils if the Board of Education were found to be operating a dual public school system which required busing in order to become a unitary system.

■ Having found that a unitary school system exists, the District Court acted within its discretion in refusing to adopt the plaintiffs' plan which would require the busing of a large number of pupils in order to obtain a certain percentage of black students in each school in the system. As the Supreme Court said in *Swann*, 402 U.S. at page 24, 91 S.Ct. at page 1280, "The constitutional command to desegregate schools does not mean that every school in every community must always reflect the racial composition of the school system as a whole."

Appellants complain that the result in this case is inconsistent with that reached by this Court in other school desegregation cases. If the result is different, it is only because the evidence produced in the District Court required a different result. The brief answer to the principal arguments of appellants is that the proof relied upon by them in the District Court and now reviewed by this Court sitting in banc failed to establish their contentions. We do not depart from the principles enunciated by this Court in Northcross v. Board of Education of Memphis City Schools, 466 F.2d 890 (6th Cir. 1972); Kelley v. Metropolitan Board of Education of Nashville and Davidson County, Tennessee,

463 F.2d 732 (6th Cir. 1972), cert. denied, 409 U.S. 1001, 93 S.Ct. 322, 34 L. Ed.2d 262 (1972); Mapp v. Board of Education of Chattanooga, 477 F.2d 851 (6th Cir. 1973) and Davis v. School District of City of Pontiac, 443 F.2d 573 (6th Cir.), cert. denied, 404 U.S. 913, 92 S.Ct. 233, 30 L.Ed.2d 186 (1971).

This Court has consistently upheld the decrees of the District Judges of this Circuit when properly supported by the pleadings and evidence. An appellate court simply cannot violate this settled principle of our jurisprudence, no matter how desirable a particular result may appear to be. The experienced District Judge who has lived with this case from its inception analyzed the evidence in great detail. His findings are supported by substantial evidence and are not clearly erroneous. As the Supreme Court, speaking through Chief Justice Burger, has recently written:

In shaping equity decrees, the trial court is vested with broad discretionary power; appellate review is correspondingly narrow. Lemon v. Kurtzman, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973).

In briefs and argument it has been brought out that the population of Knoxville is shifting and that changes have occurred since the decision was reached by the District Court and will continue to occur. We decline to consider these matters in the present appeal. Appropriate relief required by changed conditions is a matter for presentation to and consideration by the District Court. We reemphasize the holding of this Court in Kelley v. Metropolitan Board of Education of Nashville and Davidson County, *supra*: "Like most decrees in equity, an injunctive decree in a school desegregation case is always subject to modification on the basis of changed circumstances." 463 F.2d at 745–746.

The demand of appellants for attorneys' fees from the beginning of this litigation must be determined in light of the most recent Supreme Court pronouncement in Northcross v. Memphis Board of Education, 412 U.S. 427, 93 S. Ct. 2201, 37 L.Ed.2d 48 (1973). This action is remanded for consideration of this issue and in all other respects the judgment of the District Court is affirmed.

No costs are taxed. Each party will bear its own costs on the appeal.

WILLIAM E. MILLER, Circuit Judge, in a separate opinion, concurring in the affirmance of the judgment of the district court, in which WEICK, Circuit Judge, joins.

I am in full agreement with the per curiam opinion insofar as it affirms the judgment of the district court. However, it is my view that the affirmance should be upon the basis of the well-considered opinion of Judge Robert L. Taylor. *See* Goss v. Board of Education, 340 F.Supp. 711 (E.D.Tenn.1972). Since the district court has continuing jurisdiction of the case, it has the authority to consider any question pertaining to attorneys' fees as well as any other pertinent issue. For this reason I do not find it necessary that the case should be formally remanded to the district court.