Deborah A. NORTHCROSS et al.,
Plaintiffs-Appellants,

v.

The BOARD OF EDUCATION OF the
MEMPHIS CITY SCHOOLS et al., and
City of Memphis et al., Defendants-Appellees.

Deborah A. NORTHCROSS et al.,
Plaintiffs-Appellants,

v.

The BOARD OF EDUCATION OF the
MEMPHIS CITY SCHOOLS et al.,
Defendants-Appellees.

Nos. 73-1667, 73-1954.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 1, 1973.

Decided Dec. 4, 1973.

See also 6 Cir., 489 F.2d 19.

Norman J. Chachkin, New York City, and William E. Caldwell, Memphis, Tenn., for Deborah A. Northcross; Louis R. Lucas, Elijah Noel, Jr., Ratner, Sugarmon & Lucas, Memphis, Tenn., Jack Greenberg, James M. Nabrit, III, New York City, on briefs.

Ernest G. Kelly, Jr., Evans, Petree, Cobb & Edwards, Memphis, Tenn., for Bd. of Ed. of the Memphis City Schools.

Frierson M. Graves, Jr., City Atty., Memphis, Tenn., for City of Memphis and others.

Before WEICK, CELEBREZZE and PECK, Circuit Judges.

PER CURIAM.

This appeal was perfected from the Memorandum Decision and order handed down by the United States District Court for the Western District of Tennessee on May 3, 1973, ordering the implementation of a plan intended to complete the desegregation process in Memphis. Ap-

pellants assert that the plan approved by the District Court does not achieve the degree of desegregation demanded by the Constitution and recent Supreme Court cases.

The history of this case is long and involved and need not be recounted here. For its history see the opinions of this Court in Northcross v. Board of Education of Memphis City Schools, 302 F.2d 818 (6th Cir. 1962); 333 F.2d 661 (6th Cir. 1964); 444 F.2d 1179 (6th Cir. 1971); 466 F.2d 890 (6th Cir. 1972). In the latter opinion we ordered the implementation of an interim desegregation plan and directed the District Court to "prepare a definite timetable providing for the establishment of a fully unitary school system . . . ." *Northcross, supra*, 466 F.2d at 895. On remand, the District Court ordered that the interim plan, Plan A, be put into effect for the Spring semester of 1973. Appellee carried out this order, necessitating extensive student and faculty reassignments and equipment transfers. In addition, the District Court directed the Board of Education to prepare a further plan for desegregation designed to establish a fully unitary system.

The appellee created a bi-racial "Team" consisting of staff members to handle the task of drawing a new plan. Instead of proposing a single solution, the Team submitted a series of alternative plans to the District Court. The trial court conducted hearings on the various proposals, selected one of the Team's plans, and ordered its implementation for the Fall semester of 1973. Expressing his desire for an end to this litigation, the District Judge designated the effort "Plan Z." It is from the decision to adopt Plan Z that appellants bring this appeal.

The appellee's desegregation Team submitted two sets of alternative plans. Plan I and Plan III constitute one total plan, and will hereinafter be referred to as Plan I–III. Plan II (elementary) and Plan II (secondary) taken together make up one plan, and will hereinafter be simply Plan II. In addition, appellants submitted a modified version of Plan III, and the Team suggested a possible variation of Plan II (elementary).

At the elementary level Plan I–III would provide for complete desegregation of every attendance unit. Plan II integrates all but nineteen all-black or predominantly black units, but includes no all-white units. Plan I–III would require substantially greater times and distances of transportation than Plan II. The District Court chose Plan II, redesignating it "Plan Z," as hereinabove mentioned.

Plan I–III would desegregate all junior and senior high school units. Plan II leaves two all-black high schools and four all-black junior high schools. Once again, Plan I–III would involve the greater degree of transportation. The District Court opted for Plan II at this level.

It is estimated, based on projected figures,[1] that Plan II will enable eighty-three percent of the Memphis public school students to attend school in a desegregated situation. To achieve this result, over 38,000 children will be bused to school. (23,000 of the 38,000 bused students are in the elementary schools.) Forty-four percent of the bused students will spend between 31–45 minutes in transit each way, but no ride will be over 45 minutes in length.[2]

Appellants point out that Plan II leaves a number of black students in all-black or predominantly black schools,

1. Projections were based on the attendance figures for the Spring semester of 1973 when the system was operating under interim Plan A. At that time there were 131,268 students in the system.

2. The Team also worked out an alternative bus route system for both plans relying primarily on the use of expressways. The expressways result in a decrease in the transportation time for some students, although it has less effect on Plan II than on Plan I–III.

and complain that some of the very schools that were all-black at the inception of this litigation in 1960 will remain so under Plan II. The solution urged both here and below by appellants is the adoption of Plan I–III. Under this proposal ninety-seven percent of the students would be placed in desegregated units. This would require the busing of 48,000 children, the great majority of whom would ride for 31–45 minutes each way, although 9,700 would have to travel 46–60 minutes.[3] The greater number of those involved in the 46–60 minute trips would be elementary students.

■■ The District Court, sitting as trier of fact, reviewed the merits of the alternative plans submitted by appellee before reaching its decision. That decision cannot be set aside unless clearly erroneous. Rule 52(a) Fed.R.Civ.P. In Goss v. Board of Education of Knoxville, 482 F.2d 1044, 1047 (6th Cir. 1973), this Court, faced with a similar question, stated that "An appellate court simply cannot violate this settled principle of our jurisprudence, no matter how desirable a particular result may appear to be." We conclude that the District Court's choice of Plan II was not clearly erroneous and must, therefore, be upheld.

The evidence consisted mainly of projected attendance, transportation and cost figures for the various plans, and the testimony of Team members and other experts. The basic figures for the different plans have been discussed heretofore. A review of the testimony reveals that for a variety of reasons a majority of the Team favored the adoption of Plan II. The lone psychological expert was of the opinion that a shortening of the times and distances of transportation would inure to the benefit of many school children, especially the younger ones. Plan II was also recommended by the school staff and the Board of Education.

The District Court relied heavily on a phrase from Davis v. Board of School Commissioners of Mobile, 402 U.S. 33, 37, 91 S.Ct. 1289, 1292, 28 L.Ed.2d 577 (1971). That phrase directs that district courts "make every effort to achieve the greatest possible degree of actual desegregation, *taking into account the practicalities of the situation.*" (Emphasis added.) To discover what constituted a "practicality," the District Court referred to Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

The practical considerations set forth in Swann which influenced the District Court's decision in this case are as follows: First, the limited usefulness of racial quota ratios; secondly, the necessity of tolerating some one-race schools because minority groups concentrate in urban areas; thirdly, the logistical problems inherent in remedial alteration of attendance zones; and lastly, the limitations on travel that must be considered when transportation remedies are employed.

The clearest insight into the weight that the District Court gave to the practical considerations recommended by *Swann* and *Davis* is found in the following passage from the Memorandum Decision:

"The lesser degree of desegregation in combined Plan II is based primarily upon four factors pertaining to effectiveness, feasibility and pedigogical soundness. Those factors are time and distance traveled on buses, cost of transportation, preservation of desegregation already accomplished, and adaptability."

The District Court's analysis of the proposed alternatives was both thoughtful and thorough, and we do not find the conclusions reached to be clearly erroneous. As we stated in *Goss, supra*, 482 F.2d at 1047, "The experienced District Judge who has lived with this case from its inception analyzed the evidence in

3. Using the expressways only 5,347 students would ride for 46–60 minutes. *See* footnote 2, *supra.*

great detail. His findings are supported by substantial evidence and are not clearly erroneous." The above statement has equal validity here. The May 3, 1973 Memorandum Decision of the District Court ordering the implementation of Plan II and designated Plan Z is hereby affirmed.

No costs are taxed, and each party will bear their own costs on appeal.