Mark BRINKMAN et al.,
Plaintiffs-Appellees,

v.

John J. GILLIGAN and Dayton Board of
Education et al., Defendants-Appellants.

No. 76–1854.

United States Court of Appeals,
Sixth Circuit.

Argued July 8, 1976.

Decided July 26, 1976.

David C. Greer, Leo F. Krebs, Bieser, Greer & Landis, Dayton, Ohio, for defendants-appellants.

Louis R. Lucas, Ratner, Sugarmon, Lucas & Salky, Memphis, Tenn., John A. Dziamba, Willimantic, Conn., Nathaniel R. Jones, New York City, Richard Austin, Dayton, Ohio, Paul R. Dimond, O'Brien, Moran & Dimond, Ann Arbor, Mich., for plaintiffs-appellees.

Before PHILLIPS, Chief Judge, PECK and LIVELY, Circuit Judges.

PER CURIAM.

The Dayton, Ohio Board of Education (the Board) appeals from a judgment of the district court entered on March 25, 1976 which implemented its desegregation order and judgment of December 29, 1975. This court has considered two previous appeals in this litigation and our opinions are published at 503 F.2d 684 (1974) and 518 F.2d 853 (1975). This court concluded that the desegregation order from which the second appeal was taken (by the plaintiffs) was inadequate and we remanded the case to the district court with specific instructions, as follows:

> On remand we direct that the court adopt a systemwide plan for the 1976–77 school year that will conform to the previous mandate of this court and to the decisions of the Supreme Court in *Keyes* and *Swann*. We direct that this plan be adopted not later than December 31, 1975, so that it may be placed in effect at the beginning of the new school year in September 1976. 518 F.2d at 857.

After considering a plan proposed by the plaintiffs and one "submitted" but not "proposed" or "recommended" by the Board, the district court filed an order and a judgment on December 29, 1975. The judgment provided, in part, as follows:

> A school system composed of schools where the attendance meets the district ratio plus or minus 15% is a desegregated system as contemplated in *Keyes v. School District No. 1* and *Swann v. Charlotte-Mecklenburg Board of Education.*
>
> Variations from the foregoing may be permitted in exceptional circumstances without destroying the desegregation of such systems.

The judgment also permitted high school students already enrolled at a particular school to graduate from that school regardless of attendance zone boundaries. The judgment contained guidelines to be followed "wherever possible for elementary students":

> 1. Students may attend neighborhood walk-in schools in those neighborhoods where the schools already have the approved ratio;
>
> 2. Students should be transported to the nearest available school.
>
> 3. No student should be transported for a period of time exceeding twenty (20) minutes, or two (2) miles, whichever is shorter.

Dr. John A. Finger, Jr. was appointed Master to establish attendance zones and a citizens board was authorized to monitor "the plan."

On March 15, 1976 the Master filed a report containing recommended desegregation plans for the elementary schools and the high schools of the Dayton system. The report contemplated achieving desegregation of the elementary schools by a combination of redefining attendance areas and the pairing of schools. Under the plan proposed for the high schools attendance zones would be the primary tool. In a judgment entered March 25, 1976 the district court adopted the portion of the Master's report dealing with the elementary schools and approved the Master's recommended zone changes. However, the Board was given the option of making annual exchanges between paired schools without a movement of teachers or semi-annual exchanges of both pupils and teachers as recommended by the Master. The judgment also permitted the Board to implement high school desegregation by employing an assignment program by specific attendance districts rather than following the Master's proposal of permitting school selection by students plus random assignments as necessary to achieve the mandated plus or minus 15% range. The court denied the Board's proposal for a three year phase-in of the elementary school plan.

The March 25 judgment contained this additional provision:

> IV FURTHER PROPOSALS: No determination herein shall be deemed to bar the submission of any other plan to this Court that would be consistent with the standards set forth in the order of December 29, 1975. The Court will at all

times entertain a motion by any party for consideration of any specific procedure and approval will be freely granted so long as the restrictions above set forth are adhered to.

On appeal the Board argues that the remedy ordered by the district court exceeds the scope of the violations. It is argued that the district court has adopted a fixed percentage formula to achieve racial balance in the Dayton schools contrary to the holding of the Supreme Court in *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). The Board relies particularly upon the Court's statement that the constitutional requirement for school desegregation does not mean that "every school in every community must always reflect the racial composition of the school system as a whole." *Id.* at 24, 91 S.Ct. at 1280.

This court has previously held that the practices of the Dayton school system constituted de jure segregation, citing *Keyes v. School District No. 1, Denver,* 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973). *Brinkman, supra,* 518 F.2d at 854. Though this court ordered systemwide desegregation, the Board proposed no plan to achieve this mandate and made no showing of the existence of conditions related to the topography of the Dayton area, location of natural or artificial barriers, geographic isolation or similar considerations which might militate against an order requiring cross-district transportation of pupils. *Compare Goss v. Board of Education of Knoxville,* 482 F.2d 1044 (6th Cir. 1973), *cert. denied,* 414 U.S. 1171, 94 S.Ct. 933, 39 L.Ed.2d 120 (1974).

■ The student composition of the Dayton school system is approximately 48% black and 52% white. Application of the district court's requirement that each school's ratio be within plus or minus 15% of the racial makeup of the system will permit black enrollments at particular schools to range between 33% and 63%. Rather than establishing a fixed mathematical requirement as the Board claims it does, this formula provides a flexible basis

of pupil assignment similar to that approved by the Supreme Court in *Swann, supra.* The flexibility of the district court's judgment is further illustrated by the exemption of two entire grades of high school students, the provision for variations from the plus or minus 15% requirement "in exceptional circumstances" and the options granted the Board which permitted it to choose alternate methods of achieving desegregation rather than being required to follow in every detail the plan submitted by the Master. We view the use of mathematical ratios in this case as no more than "a useful starting point" in shaping a remedy for past discrimination. *Swann, supra,* 402 U.S. at 25, 91 S.Ct. 1267.

Our conclusions are in accord with those of other courts of appeals which since *Swann* have approved desegregation plans requiring system-wide adherence, within an established percentage range, to the student racial composition of the district. *See, e. g., Morgan v. Kerrigan,* 530 F.2d 401 (1st Cir.), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1976); *Harrington v. Colquitt County Board of Education,* 460 F.2d 193 (5th Cir.), *cert. denied,* 409 U.S. 915, 93 S.Ct. 238, 34 L.Ed.2d 177 (1972); *United States v. School District of Omaha,* 521 F.2d 530 (8th Cir.), *cert. denied,* 423 U.S. 946, 96 S.Ct. 361, 46 L.Ed.2d 280 (1975); *Kelly v. Guinn,* 456 F.2d 100 (9th Cir. 1972), *cert. denied,* 413 U.S. 919, 93 S.Ct. 3048, 37 L.Ed.2d 1041 (1973); *Keyes v. School District No. 1, Denver,* 521 F.2d 465 (10th Cir. 1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 806, 46 L.Ed.2d 657 (1976).

■ The Board also argues that the district court based its judgment on a misconception of the constitutional requirements for a unitary school system. In its order of December 29, 1975, which discussed the provisions contained in the separate judgment entered the same day, the district court wrote—

. . . it is a constitutional right enforceable in the federal courts that students, irrespective of race or residence, shall share equally all facilities of a

school system, both the superior and the inferior.

When considered out of context and read literally the quoted language does appear to create a right which the federal courts have never recognized. However, in the context of the order this statement appears to be nothing more than an affirmation that a system-wide desegregation plan must necessarily involve all the facilities of a school system and that pupil assignments will be made as required to eliminate the vestiges of past discrimination without regard to the comparative quality of the various facilities. Be that as it may, the quoted language does not appear in the judgment, which is the instrument this court reviews on appeal.

At oral argument counsel for the Board contended that there is implicit in the judgment of the district court a requirement for periodic changes in the Dayton plan to maintain the required racial mix and that this violates the rule enunciated by the Supreme Court in *Pasadena City Board of Education v. Spangler,* —— U.S. ——, 96 S.Ct. 2697, 49 L.Ed.2d ——, (1976). The short answer to this argument is that the judgment directs no changes after the 1976–77 school year. The district court did not adopt *in toto* the Master's report in which there was speculation about the necessity for future adjustments in the plan. The *Spangler* decision held that after Pasadena had established a unitary school system the district court could not require annual adjustments in attendance zones to prevent the development of racially identifiable schools within the system, where subsequent changes in the racial mix are caused by factors for which the school authorities could not be considered responsible. The judgment appealed from in the present case established the first constitutionally sufficient desegregation plan for the Dayton system. If adjustments to this plan are sought by any of the parties in future years the district court will necessarily consider the limitations of *Spangler* in dealing with such requests.

The judgment of the district court is affirmed.