Mark BRINKMAN, et al., Plaintiffs,

v.

John J. GILLIGAN, et al., Defendants.

Civ. No. C–3–75–304.

United States District Court,
S.D. Ohio, W.D.

Jan. 26, 1982.

Richard Austin, Austin, Jones, Littlejohn & Owens, Dayton, Ohio, Louis Lucas of Picard, Canale, Caywood, Lucas & Watson, William E. Caldwell, Ratner & Sugarmon, Memphis, Tenn., Thomas I. Atkins, Gen. Counsel, Brooklyn Heights, N.Y., for N.A.A.C.P. Special Contribution Fund.

David C. Greer, Leo F. Krebs, Bieser, Greer & Landis, Dayton, Ohio, for Dayton Schools.

Gary E. Brown, Asst. Atty. Gen., State Departments Section, Columbus, Ohio, for defendants Governor of Ohio and Attorney General of Ohio.

James D. Ruppert, Franklin, Ohio, for Ohio Dept. of Educ., Superintendent of Public Inst., and State of Ohio Bd.

## ORDER

CARL B. RUBIN, District Judge.

## I. INTRODUCTION

### A. *The Northcross Standard*

■ Attorney fees in a school desegregation case in this Circuit are governed by *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir. 1979) (hereinafter "Northcross"). A reasonable fee is the product of [1] the number of hours reasonably expended times [2] the customary rate for such hours.

*Northcross* specifically prohibits the use of a "multiplier". The majority opinion reaffirms this position first taken in *Oliver v. Kalamazoo Board of Education,* 576 F.2d 714 (6th Cir.1978).

In pointing out that the routine hourly rate is not necessarily the maximum that should be awarded the *Northcross* court suggested that "special circumstances" such as unusual time constraints, an unusually unpopular cause or the contingency of success should be considered.

Any school desegregation case in the early 1970's was inherently unpopular. Partisans could and often did stir up violent emotional reactions. Boston and Louisville were yet to come. It is a tribute to the professional deportment of all counsel that no violence ever marred the Dayton desegregation effort.

An examination of the time expended by Plaintiffs' counsel discloses that close to 40% of all time occurred in 1972 when success was not assured. The contingency of success markedly improved by February, 1973, when this Court's opinion was issued. From that date forward, issues of remedy predominated.

The specific language regarding contingency of success is as follows:

We also note that in a long and complicated lawsuit such as this one, only a portion of the time expended can be reasonably regarded as contingent; once liability is established, the attorney is assured of compensation for establishing the appropriate remedy, monitoring the decree, and recovering his fee. *Northcross, supra* at 638.

There is also an admonition contained in *Oliver v. Kalamazoo Board of Education,* 576 F.2d 714 (6th Cir.1978) that trial judges in this Circuit must heed. The court in that case stated:

> Attorney fee awards in school desegregation cases should be high enough to attract competent counsel yet not so high as to provide a windfall for them.

With the foregoing in mind, the Court makes the following observance regarding the *Northcross* formula of hourly rate times reasonable hours.

### 1. *Hourly Rates*

The determination of reasonable hourly rates lends itself to a greater objectivity than the consideration of reasonable time expended. Assistance is available from Fee Guides in the community where the services were rendered; testimony may be obtained from attorneys who have rendered similar services; and the seeking counsel themselves may testify as to their customary rates. In this matter, the Court has had the benefit of all three and the conclusions drawn may be found in Finding of Fact 1.

### 2. *Hours Reasonably Expended*

■ Hours expended is not equally susceptible to an objective determination. It is more than a problem in addition. It involves not only hours logged but also questions of duplication and excessive time unnecessary to achieve the result. As a basic proposition, counsel should not be compensated for hours needlessly spent nor for those that merely duplicated the activities of co-counsel. This proposition, however, cannot be stated as an absolute. Under certain circumstances, either or both of the foregoing may require compensation. For purposes of assessing appropriate hours, the Court has formulated the following standard.

> Reasonable hours are those that a competent attorney would spend diligently preparing his client's claims and both diligently and efficiently presenting those claims to the trial court and when necessary to the appellate courts.

Trial counsel should not be discouraged from exploring claims that later prove meritless; he should not be inhibited from producing witnesses whose testimony may or may not be deemed admissible; he should be free to research and argue issues that are novel.

Conversely, counsel must not be encouraged to spend needless hours in unnecessary efforts, submit excessive witnesses or argue meritless contentions solely for purposes of fee enhancement.

Hours expended, as a practical matter, cannot be effectively monitored. All that a court may do is examine for needless duplication among multiple attorneys and consider whether time claimed appears to be warranted.

### B. *Case History*

*Brinkman v. Gilligan,* Civil No. 2–72–137 [1], was filed in Columbus, Ohio in May, 1972. It was tried on the merits to the Court in November, 1972 and it required ten days of trial. The decision of the trial court was issued in February, 1973. Remedy hearings, remands by appellate courts and fee hearings required eight days of hearings in 1975; two days in 1976; five days in 1977; and one day in 1981. On only five occasions were full trial days required.[2] The matter was not finally concluded until

---

**1.** Under the numbering system used in the District Courts, a case is renumbered when it is transferred from one city to another. The case number 2–72–137 in this matter was changed to 3–75–304 when it was transferred from Columbus to Dayton, Ohio in 1975.

**2.** The records of the Court Reporter indicate appearances in the courtroom on only the fol-

July, 1979 when the Supreme Court of the United States issued its second opinion, *Dayton Board of Education v. Mark Brinkman*, 443 U.S. 526, 99 S.Ct. 2971, 61 L.Ed.2d 720 (Dayton II). In the intervening seven years, *Brinkman* was heard on four separate occasions by the United States Court of Appeals for the Sixth Circuit and twice by the Supreme Court of the United States.[3]

## C. *Comparisons of Time*

The focus of appellate activity after 1972 bears upon a distinction which should be made between time expended on trial preparation and trial and time expended on appeals.

Defendants have filed with the Court comparisons of the time expended by Plaintiffs' counsel and by Defendant's counsel on similar activities.[4] (DX B–1981, DX C–1981, DX D–1981) Plaintiffs' trial counsel were highly experienced in litigating questions of school desegregation [5]. Conversely, defense counsel, while highly experienced in trial matters, have not been involved in desegregation matters either before or after the *Brinkman* case. Defense counsel point out that despite the advantage of

experience, Plaintiffs' counsel expended substantially more time on this case.

When comparing the time expended it must be recognized that it is usually more difficult for a plaintiff to prepare for trial than it is for a defendant. Plaintiffs' trial counsel were strangers to the City of Dayton, Ohio; they had no organization available to assist them that compared to the Defendant Board of Education staff; and the evidence sought was almost all in the hands of the Defendants. Plaintiffs had the burden of proof and indeed most of the trial time was consumed in their presentation.

Time and effort expended in preparation of and in trial, while substantially disparate as shown in DX D–1981, should be assessed in terms of the foregoing. There must have been inquiries undertaken that proved unnecessary; there must have been witnesses interviewed who were not called to testify. Hindsight always discloses a more efficient method of doing anything. In trial preparation and in trial itself Plaintiffs' counsels' time will be accepted as a recognition of the latitude necessary to prepare and present the case in a proper manner.

lowing dates: July 7, 1975—½ hour; December 8, 1975—6 hours; December 9, 1975—3 hours; March 22, 1976—5 hours; March 23, 1976—2 hours; August 8, 1977—1 hour; November 1, 1977—6 hours; November 2, 1977—6 hours; November 3, 1977—1 hour; November 4, 1977 —5 hours; October 26, 1981—3 hours. Total courtroom time from 1975 to 1981—38½ hours.

3. Published opinions by appellate courts may be found as follows: United States Court of Appeals for the Sixth Circuit: 503 F.2d 684 (August 20, 1974); 518 F.2d 853 (June 24, 1975); 539 F.2d 1084 (July 26, 1976; 561 F.2d 652 (August 25, 1977); 583 F.2d 243 (July 27, 1978). Supreme Court of the United States: 433 U.S. 406, 97 S.Ct. 2766, 53 L.Ed.2d 851 (June 27, 1977—Dayton I); 443 U.S. 526, 99 S.Ct. 2971, 61 L.Ed.2d 720 (July 2, 1979—Dayton II).

4. Defendant's Exhibit (DX B–1981) shows a total expenditure of time by Plaintiffs' counsel of 5768.5 hours and a total expenditure by Defendant's counsel of 3447.75 hours.

5. There are few, if any, attorneys in the United States who have had more experience in a school desegregation case than Louis Lucas. A partial list of the many school desegregation

cases in which he was counsel includes the following: *Estes v. Metropolitan Branches of the Dallas NAACP*, 444 U.S. 437, 100 S.Ct. 716, 62 L.Ed.2d 626 (Jan. 1980); *Columbus Board of Education v. Penick*, 443 U.S. 449, 99 S.Ct. 2941, 61 L.Ed.2d 666; *Millikan v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745; *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624 (6th Cir.1979); *Evans v. The Board of Public Education of the City of Wilmington*, 555 F.2d 373 (3rd Cir.1977); *Oliver v. Kalamazoo Board of Education*, 6 Cir., 576 F.2d 714; *Claymont v. The Newark School District*, 555 F.2d 373 (3rd Cir.1977); *Rodriguez v. Young, Mayor of the City of Detroit*, 540 F.2d 229 (6th Cir.1976); *Bronson v. The Cincinnati School District*, 525 F.2d 344 (6th Cir. 1975); *Evans v. Buchanan*, 512 F.Supp. 839 (D. of Delaware 1981); *Barry v. School District of the City of Benton Harbor*, 467 F.Supp. 721 (W.D. of Michigan 1978); *Bradley v. School Board of the City of Richmond*, 324 F.Supp. 439 (E.D. Virginia 1971); *Beckett v. The School Board of the City of Norfolk*, 308 F.Supp. 1274 (E.D. Virginia 1969); *Franklin v. The Quitman County Board of Education*, 288 F.Supp. 509 (N.D. Mississippi 1968).

The same reasoning does not apply to the appellate services of Plaintiffs' counsel. Defendant's advantage, if any, vanished on appeal. Both sides were confronted with the same reported cases and the same state of the law. In this case appellate presentation gave a distinct advantage to the Plaintiffs. Defense counsel approached an appeal on a school desegregation case for the first time. Plaintiffs' counsel did not. At least the basic research and appropriate argument had in part already been done in the many other cases in which plaintiffs' counsel were involved. Plaintiffs should not have required more time to prepare appellate briefs. The issues raised questions upon which Plaintiffs had particular expertise and vast experience. Defendant's counsel did not.

Duplication is inevitable where, as here, at least five lawyers were involved. It is difficult, if not impossible to locate. In terms of the appellate activity it is discernable only in the totality of time expended. Counsel may properly fragment appellate preparation in any manner they see fit. The Court does not inquire in multiple counsel per se, it inquires only into the totality of reasonableness. The Court does find it significant that appeals were prepared and argued by Defendants with the expenditure of far less time.

Based upon the foregoing, the Court makes the following findings of fact.

## II. FINDINGS OF FACT

█ 1. The determination herein of the lodestar rate is based upon the testimony that was presented to the Court by Plaintiffs' counsel, Louis Lucas, William Cald-well and Richard Austin, by defense counsel, David Greer and by defense witnesses, Larry Smith and John McCue. The Court has had the benefit of affidavits filed herein by Plaintiffs' counsel and the Columbus, Ohio Bar Association Fee Guide of 1971. In addition, the Court has the benefit of twenty-seven years of personal experience as an Ohio lawyer.

2. A fee guide [6] prepared by the Columbus Bar Association and in use in Columbus, Ohio in 1972 contained the following:

(1). Office consultations, research and briefing and other services not otherwise covered: hourly rate $35.00.

(2). Per diem rate for trial in the United States District Court: $250.00

(3). Appeals to the United States Circuit Courts of Appeal: $1,200.00

(4). Appeals to the United States Supreme Court: $1,750.00

The section of the fee guide entitled "Appeals" contains the following:

"Note: These fees cover research, briefing, preparation for appearances and appearances."

3. Based on all of the foregoing the Court finds that Fifty Dollars ($50.00) per hour in 1972 was a reasonable rate of compensation [7]. Fifth Dollars per hour is less than the Plaintiffs seek, it is more than defense counsel and defense witnesses charged for similar services and it is also approximately 30% more than the rates set forth in the Columbus Bar Association Fee Guide.

The 1971 fee guide is the latest such guide available for the Columbus area.

6. The use of a fee guide was noted in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1973) as bearing upon the "Atlanta Community Practices". The holding of the United States Supreme Court in *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), effectively caused the abandonment by bar associations of fee guides or minimum fee schedules. The decision in Goldfarb, however, does not make fee guides issued prior thereto any the less accurate or less indicative of community standards of the usual and customary charges at the time. Admittedly, any fee guide becomes less and less accurate as time passes and inflation increases.

7. As shown hereafter, the actual rate of compensation will vary from $60.00 per hour in 1972 to $125.00 per hour in 1981. Recently the United States Court of Appeals for the Sixth Circuit determined that an award for successful services in a Fair Housing Act case filed in 1977 computed at $50.00 per hour without a factor "did not amount to an abuse of discretion." *Johnson v. Snyder* (1981), affirming *Johnson v. Snyder,* 470 F.Supp. 972 (N.D.Ohio 1979).

The United States Bureau of Labor Statistics has compiled a Consumer Price Index (CPI) which reasonably reflects the increases in the cost of living over the past decade. The Index is computed with the year 1967 used as the base of 100. In the year 1972, the CPI stood at 125.3. In order to compute increases over 1972, that number must be considered as 100. Properly to reflect necessary increases and in the absence of any later fee guide, the rates in Finding of Fact 2 should be raised year by year in an equivalent manner. (See Chart A).

4. From its own observations, the Court determines that the legal services herein were rendered in a competent and professional manner; the litigation was conducted promptly, the evidence presented to the trial court was well prepared and presented in a coherent and brief fashion.

5. *Northcross* does not appear to deal with a question inherent in the compensation process. Desegregation cases by their very nature tend to be prolonged cases. The services rendered may not be compensated for a substantial period of time. Under ordinary circumstances, it would seem that Plaintiffs' counsel should be entitled to interest. In the absence of any authority for an award of interest, the Court can only conclude that this is a matter that should be considered in the "reasonable fee" analysis [8]

6. Plaintiffs' counsel, with the exception of Nathaniel Jones,[9] assert a total of 5,287.-75 hours (Def.Ex. A–1981). For the same services, defendant's counsel assert the expenditure of 3,447.75 hours. In accordance with the discussion regarding relative problems of counsel, the Court will accept as accurate and compensable the time spent by

**8.** It should be observed in this connection that while Plaintiffs' counsel were appropriately diligent in prosecuting this lawsuit, they were noticeably less than diligent in requesting fees. Although this matter was concluded in June of 1979, it required correspondence by the Court in 1980 and a specific order in 1981 before counsel responded with the information required by Northcross (See Order No. 194).

Accordingly, even the consideration of interest ends in 1979 when the matter of fees appropriately should have been presented for determination. See Northcross, supra at 635.

Plaintiffs' counsel in 1972. An exception will be dealt with separately.

7. Defendant's Exhibit A–1981 indicates that Plaintiffs' counsel expended 3,141.65 hours after 1972. Defense counsel expended 2,419.75 hours during the same period. In view of the fact that for all practical purposes the trial of this matter was concluded by the end of 1972, the Court will assume that the balance of the time properly was attributable to appeal. A comparison of the hours expended on appeals indicates that Defense counsel required only 77% of the time required by Plaintiffs. While counsel has made a persuasive argument that the number of hours to accomplish the appeals necessary in this case should reduced proportionately, the Court will not do so. Instead likelihood of unnecessary hours will instead be an additional consideration in reaching the ultimate fee.

8. In keeping with *Northcross* the Court has balanced the foregoing considerations and concludes that to arrive at "reasonable rates", there should be an increase of 20% for activities in the trial court in 1972 and no increase thereafter.

9. The Estate of J. Maynard Dickerson seeks $10,000.00 based upon 100 hours at $100.00 per hour. Mr. Dickerson attended the ten days of trial in November of 1972. He interrogated no witness, he made no motion and argued no position to the Court at any time during that period. His attendance in the court room was due in part at least by Local Rule 8(a) now Rule 3.0 which requires the appearance of local counsel. The Fee Guide rate of Two Hundred Fifty Dollars ($250.00) per day for trial assumes a meaningful participation at that trial. Based upon the foregoing, the Court deems

**9.** On October 5, 1979, Nathaniel Jones was appointed to the United States Court of Appeals for the Sixth Circuit. In accordance with procedures suggested by this Court and approved by The Honorable George C. Edwards, Jr., Chief Judge of the United States Court of Appeals for the Sixth Circuit and The Honorable Sandra Day O'Connor, Circuit Justice for the Sixth Circuit, appropriate fees for Judge Jones will be determined in a separate proceeding by The Honorable Thomas Fairchild, Senior Judge of the United States Court of Appeals for the Seventh Circuit.

appropriate compensation to be $150.00 per day and awards to the Estate of Maynard Dickerson One Thousand Five Hundred Dollars ($1,500.00).

10. Reasonable attorney fees in accordance with the foregoing are:

| A. | Louis Lucas | $ 100,093.50 |
|----|-------------|--------------|
| B. | William Caldwell | $ 107,073.75 |
| C. | Richard Austin | $ 30,540.00 |
| D. | Paul Dimond | $ 144,333.00 |
| E. | Estate of Maynard Dickerson | $ 1,500.00 |
| | | $ 383,540.25 |

11. Based upon the most recent filing by Plaintiffs there is a request for out-of-pocket expenses in the sum of $68,236.58 less costs already paid by Defendant and some owing by Plaintiffs to Defendant in the total amount of $13,346.04, or a net request for reimbursement in the sum of $54,890.54. Plaintiffs' request for out-of-pocket expenses is hereby approved with the following exceptions:

A. Check No. 21291 seeks payment of $447.93 including $265.85 for a stay in Washington, D.C. from April 22 to April 26, 1977. Defendants point out that a five-day stay to appear before the Supreme Court of the United States is unnecessary. The Court agrees with this position and accordingly, 60% of the $265.85, or $159.51 will be disapproved.

B. Check No. 0947, covering the period April 22 to April 27, 1977 for a stay in Washington, D.C. contains the same objection. The Court will approve only two days of the six requested and will disapprove the balance. Deducted from the expense to be awarded Plaintiffs is the sum of $421.33.

C. Check No. 66439 in the sum of $278.72 involves a trip by one Sharon White to Washington, D.C. from November 9, 1978 to November 11, 1978. The name Sharon White has not been identified to the Court and such expenditure is hereby disapproved.

D. Check No. 1926 in the sum of $1,743.73 includes items of another case in which Plaintiffs' counsel were involved, *Penick v. Board of Educa-tion of the City of Columbus, Ohio*, i.e.: "A Priority Parcel to Chachkin (copy of Columbus brief); trip to D.C. for Supreme Court argument (24 April) via Columbus to pick up trial exhibits." In the absence of any additional information the Court does determine that one-half of the expenses set forth in Check No. 1926 should be attributed to the *Columbus* case and not charged here. Accordingly, $871.86 will be deducted.

E. Check No. 7973 in the sum of $278.53 involves a travel to Columbus on July 27, 1979. This case was concluded by June of 1979 and in no event were there any proceedings in this matter in Columbus, Ohio after 1975. Accordingly, the sum of $278.53 will be deducted.

F. Check No. 2302 in the total sum of $1,264.55 includes $292.50 for "meeting with funding sources" and $626.55 for "photocopying 4,177 copies." Neither of these expenditures appear appropriate to this matter and such expenditures, totaling $919.05, will be denied.

G. Check No. 4683 includes three items of xeroxing totaling $747.68. Check No. 1858 includes xeroxing for $931.51 and Check No. 2220 lists xeroxing at $982.32. It is not clear what was xeroxed and the Court is unable to make that determination. The sum of $2,661.51 will be deducted for the out-of-pocket expenses with the right of Plaintiffs' counsel to advise the Court specifically what items were xeroxed.

H. Check No. 1940 in the sum of $431.46 involves "preparing and circulating the social science statement" by the Center for National Policy Review. It is not clear what involvement the "Center for National Policy Review" had in this case or what was involved in the "social science statement". Accordingly, the sum of $431.46 is hereby deducted from the out-of-pocket expenses to be awarded.

Recapitulation of Expenses

| | | |
|---|---|---|
| Total Requested | $ 68,236.58 | |
| Payments and Credits | 13,236.04 | |
| Net Requested | | $54,890.54 |

Items Disallowed

| | |
|---|---|
| A............................ | 159.51 |
| B............................ | 421.33 |
| C............................ | 278.72 |
| D............................ | 871.86 |
| E............................ | 278.53 |
| F............................ | 919.05 |
| G............................ | 2,661.51 |
| H............................ | 431.46 |
| Total | 6,021.97 |

NET AWARDED ....................$48,868.57

In accordance with the foregoing the sum of $6,021.97 is hereby deducted from the out-of-pocket expenses requested and the Court does award to Plaintiffs' counsel the sum of $48,868.57.

To summarize the foregoing Order, the Defendants are hereby directed to pay to Plaintiffs' counsel the sum of $383,540.25 for attorney fees, plus $48,868.57 out-of-pocket expenses for a total of $432,408.82. The foregoing shall not be deemed to include attorney fees for Nathaniel Jones, which will be separately determined as above set forth.

IT IS SO ORDERED.

CHART A

INCREASE IN CPI OVER 1972

RATE DETERMINED AT $50.00 PER HOUR

| YEAR | CPI OVER 1967 | INCREASE | CPI OVER 1972 | HOURLY RATE TO NEAREST $5 |
|---|---|---|---|---|
| 1972 | 125.3 | 0 | 100 | $50.00 |
| 1973 | 133.1 | 7.8 | 107.80 | $55.00 |
| 1974 | 147.7 | 22.4 | 122.40 | $60.00 |
| 1975 | 161.2 | 35.9 | 135.90 | $70.00 |
| 1976 | 170.5 | 45.2 | 145.20 | $75.00 |
| 1977 | 181.5 | 56.2 | 156.20 | $80.00 |
| 1978 | 195.4 | 70.1 | 170.10 | $85.00 |
| 1979 | 217.7 | 92.4 | 192.40 | $95.00 |
| 1980 | 249.6 | 124.3 | 224.30 | $110.00 |
| (Sept.) 1981 | 279.3 | 154.0 | 254.00 | $125.00 |